## DRUMM-FLATO COMMISSION COMPANY v. R. C. EDMISSON.

(Filed September 5, 1906.)

1. **SALES—Place of Delivery—Presumption.** Where a contract for the sale of personal property is silent as to the place of delivery, the law will presume that the property is to be delivered at the point where it is located at the time the contract is entered into

2. **EVIDENCE—Books of Account.** It is not error to exclude entries in books of account, where such entries do not relate to the transaction which is the subject of inquiry, since under such circumstances they are immaterial.

3. **SAME—Same.** There was no error in excluding the testimony of the bookkeeper showing the entries made from the scale tickets delivered to him by the defendant's employe at the stock yards at Kansas City some days after the delivery of the cattle to the agent of the company in Oklahoma.

4. **TORTS—Action for Conversion—Interest.** In an action for the wrongful conversion of personal property, under the provisions of our statute a party is entitled, as a matter of right, to recover interest from the date of the conversion.

5. **JURY—Special Interrogatories.** Where a special interrogatory is submitted to the jury, it should be clearly and concisely stated, so that the jury can give a direct answer thereto.

6. **SAME—Same.** A special interrogatory that is not material, or that has a tendency to confuse or mislead the jury, should be refused.

7. **TRIAL—Remarks of Court—Exceptions.** Prejudicial remarks of the court during the course of the trial must be excepted to at the time, and such objections cannot be raised for the first time in the appellate court.

(Syllabus by the Court.)

*Error from the District Court of Woods County; before J. L. Pancoast, Trial Judge.*

*Botsford, Deatherage & Young,* and *H. A. Noah,* for plaintiff in error.

*Snoddy & Son, Charles Swindall* and *D. P. Marum,* for defendant in error.

STATEMENT OF FACTS.

This action was an action brought in the district court of Woods county by R. C. Edmisson against the Drumm-Flato Commission Company, for the wrongful conversion of 410 head of cattle, whereby the plaintiff claims he has sustained damages in the sum of $8,000.00.

The issues and the facts in this case are fully stated in the former decision of this court, in the case of *Edmisson v. Drumm-Flato Commission Company,* 13 Okla. 440, and need not be restated here.

The cause was submitted to a jury, both parties having introduced considerable testimony to sustain their respective contentions, and a verdict was returned in favor of the plaintiff, assessing the damages in the sum of $7,436.06. The jury returned also with their general verdict answers to special interrogatories which were submitted at the request of the defendant. These questions and answers are as follows:

"Q. After November 22, 1899, how many cattle did the Drumm-Flato Commission Company receive of the Edmisson brand?

"Ans. 2284 head of cattle.

"Q. Who paid the expenses of gathering the Edmisson cattle gathered after November 22, 1899?

"Ans. Refused.

"Q. Who gathered the Edmisson cattle after November 22, 1899?

"Ans. Edmonson, Bryson and Gober.

"Q. Did plaintiff, Edmisson, gather and deliver to the Drumm Flato Commission Company or its agents any cattle after November 22, 1899? If so, how many?

"Ans. Yes. Helped gather and deliver 1710 head of cattle.

"Q. How many Edmisson cattle did J. F. Bryson ship from Curtis to Kansas City?

"Ans. Not sufficient evidence to determine.

"Q. How many Edmisson cattle did J. R. Gober gather?

"Ans. 574 head of cattle."

The court approved the general verdict, and rendered judgment in accordance therewith. Motion for a new trial was duly filed and overruled, exception saved, and the defendant appeals.

Opinion of the court by

HAINER, J.: The first error assigned and argued by the plaintiff in error is that there is no substantial evidence in the record to support the verdict. This contention cannot be sustained. A careful reading and examination of the entire record fully convinces us that the plaintiff established his cause of action by a clear preponderance of the evidence and that the general verdict and the answers to the special questions submitted are abundantly sustained by the evidence.

In the former opinion of this court, Chief Justice Burford, in passing upon this question, uses the following language:

"Treating the contract as valid and enforceable, does the evidence show a sufficient compliance or effort to comply with it on the part of Edmisson? As against the demurrer, the evidence shows that he delivered to the company 1,710 head of these cattle, and then rounded up and held out 350 additional head, and tendered them to the agent of the company. This was all that he was required to do by the agreement, and was all he could do under the conditions existing. The company took and appropriated the 1,710 head, but declined or at least failed to accept the remainder offered, and

subsequently directed Gober to seize all he could find, which he proceeded to do, and turned them over to the commission company or accounted to them for them. We think this evidence sufficient to entitle the plaintiff to a judgment in his favor. What the amount of the damage is, must be left to the jury."

In the second assignment of error it is urged that the court erred in rejecting the books of account kept by the defendant, showing the number of Edmisson cattle sold by the defendant in December, 1899. The contract, which was the basis of this action, contained the following provision:

"That said R. C. Edmisson, the second party, hereby agrees to deliver to Drumm-Flato Commission Company nineteen hundred (1900) head of cattle as they run on the range, (provided the same can be found to make this number of head) of various ages and on which said Drumm-Flato Commission Company hold a chattel mortgage."

Pursuant to this contract, the defendant company, in the latter part of November, sent its agent, Bryson, from Kansas City to the plaintiff's ranch in Woods county, Oklahoma, to gather, count and ship the cattle to Kansas City. It further appears that Bryson, the agent of the company, employed several men to assist him in gathering the cattle on the plaintiff's ranch, in which work they were engaged about eight days.

The plaintiff testified that he and the company's agent; Bryson, together with a number of persons employed by Bryson to assist him, rounded up 1710 head of cattle, and that that number of cattle were counted and tallied through a gate west of the plaintiff's house about three-quarters of a mile. That the cattle were counted at that place in the presence of Bryson, Black, the Bollman Brothers, Ed Edmisson

and himself. That after the cattle were counted, Bryson placed them in what is known as the Harrington and Roberts pasture. He states that the count was made by himself and by Black, who was employed by Bryson. That the count was correct, and was satisfactory to Bryson, who made a memorandum thereof in a book of account, and turned the cattle into the Harrington and Roberts pasture.

Edmisson further testified that on the day that Bryson shipped the cattle from Curtis, he, Edmisson, gathered three or four hundred head of cattle in addition, for the purpose of taking care of them until Bryson, the agent of the defendant company, could return and receive the balance of the cattle under the contract. That he went to Bryson and informed him that he was ready to deliver the balance of the cattle. That Bryson stated that he would return to receive the balance of the cattle as soon as he made that shipment. Black, the employe of Bryson, clearly corroborates the testimony of Edmisson, and testifies that he assisted in gathering the cattle and rounding them up, and that the count took place at the gate, in the presence of Bryson, as testified to by Edmisson; that 1710 head of cattle were counted; that he and Bryson and Edmisson compared counts, and they agreed as to the correctness of the number, to-wit: That there were 1710 head of cattle; that after the cattle were counted, they were delivered to Bryson, and then they were turned loose until the next morning in the Harrington pasture, when they were again rounded up, and driven by Bryson and his employes to Curtis station.

Bryson, on this point, testified, in substance, that about four days after the contract had been signed in Kansas City he went to the plaintiff's ranch, and employed several men to

gather the cattle. That it took about eight days to gather and round up the cattle. That he did not count the cattle at the gate, as testified to by the plaintiff and his witnesses, but that they were counted in the stock yards at Curtis; and that according to his count at Curtis, there were 1556 head, including cows and calves.

The court permitted the defendant to show the number of cattle that were shipped at various times from Curtis, Oklahoma, including these cattle in controversy, as well as former shipments, and also permitted the employe of the defendant company at the stock yards at Kansas City, to testify as to the number of cattle that were received at that point; but excluded the testimony of Burnett, the bookkeeper of the defendant company, as to what the books showed in reference to the number of cattle that were received under this contract, and as shown by the scale tickets of Rooney.

Bryson also testified that while he was gathering and rounding up the cattle he made various counts, and made a memorandum of the same; and that the actual count took place at Curtis station, and that he made a memorandum of it in his book at the time. The defendant did not attempt to offer these memorandums in evidence, or to show that the entries in the books at Kansas City were made therefrom, but attempted to show the number of cattle that were received, as shown by the scale tickets that were delivered by Rooney, the employe of the company at the stock yards in Kansas City, to its bookkeeper, Burnett. Manifestly, the memorandum that related to the transaction as to the number of cattle that were delivered by Edmisson to the agent of the company, was that kept by Bryson where the count took place, at the point of the delivery of the cattle. Had such a memorandum

been entered upon the books in Kansas City, it would have been clearly competent, as it related to the transaction and was a part of the *res gestae.*

In this connection, it must be borne in mind that the contract did not provide where the cattle should be delivered, and was wholly silent upon that question. The presumption of law, therefore, was that the cattle were to be delivered where they were located at the time the contract was entered into. And this no doubt was the clear intention of the parties, because immediately after the execution of the contract the defendant company sent its agent to the pasture of the plaintiff, where the cattle were located, and at once began to gather the cattle for shipment to Kansas City. After the cattle were delivered by the plaintiff to the agent of the defendant, the plaintiff had no further control over them. And it seems to us that any transaction between the employe of the defendant at the stock yards in Kansas City, and the bookkeeper of the defendant, a number of days after the delivery of the cattle by the plaintiff to the agent of the defendant company, did not relate to the transaction, and was therefore properly excluded, as not being material to the issues involved. And this ruling is not repugnant to the provisions of section 4277 of the Statutes of 1893, which is as follows:

"Entries in books of account may be admitted in evidence, when it is made to appear by the oath of the person who made the entries, that such entries are correct, and were made at or near the time of the transaction to which they relate, or upon proof of the handwriting of the person who made the entries, in case of his death or absence from the county."

Nor do we think it is in conflict with the rule announced by this court in the case of *Kesler v. Cheadle,* 12 Okla. 489,

nor with the decision of the Missouri court of appeals in the case of *Drumm-Flato Com. Co. v. Gerlack Bank,* 81 S. W. 503, which authorities are relied upon by the plaintiff in error for a reversal of the cause on that point.

If, under the terms of the contract, the plaintiff had been required to ship the cattle to the defendant company at Kansas City, and the plaintiff, pursuant to such agreement, had gathered and shipped the cattle direct to the stock yards at Kansas City, then the scale tickets, and any entries made by the bookkeeper, Burnett, as to the receipt of the cattle at that point would certainly have been material and competent evidence, and it would have been error to exclude it. In that event the scale tickets, as well as the entries in the books would have related to the transaction of the delivery of the cattle, and would have been a part of the *res gestae.* But in this case the delivery took place at the plaintiff's pasture, where the cattle were received by the defendant's duly authorized agent. After the delivery of the cattle at that point, the plaintiff exercised no further control over them.

There is still a stronger reason why the ruling of the court should be upheld. The defendant did not produce the books in court, nor was the book or the original entries therein attached to the deposition of the witness, Burnett. Hence, we think it was clearly incompetent to attempt to prove the entries by permitting the deposition of the witness, Burnett, to be read to the jury as to the contents of the book. We know of no rule of evidence that would permit a witness to state the entries or the accounts of a book account, unless the books are lost or destroyed.

It follows that there was no error in excluding the testimony of the bookkeeper, showing the entries made from the

scale tickets that were delivered to him by the defendant's employe, Rooney, at the stock yards at Kansas City, some days after the delivery of the cattle to the agent of the defendant company.

It is next contended that the court erred in instructing the jury that if they found there was a conversion of the property, the plaintiff was entitled to recover the value thereof, with seven per cent. interest thereon from the date of the conversion.

Section 2640 of the Statutes of Oklahoma of 1893 provides as follows:

"The detriment caused by the wrongful conversion of personal property is presumed to be: First, the value of the property at the time of the conversion, with the interest from that time. * * *"

It is argued by plaintiff in error that section 2615 is applicable to this case, and which section is as follows:

"In an action for the breach of an obligation not arising from contract, and in every case of oppression, fraud or malice, interest may be given in the discretion of the jury."

We are unable to perceive how this section is applicable to a case of wrongful conversion of personal property, where the statute fixes the specific measure of recovery. In the case of a wrongful conversion of personal property, under the provisions of our statute, a party is entitled, as a matter of right, to recover interest from the date of the conversion, and it would be erroneous for the court to submit an instruction that it rests within the discretion of the jury. The provision of the statute relied upon by counsel for plaintiff in error is not applicable to a wrongful conversion of personal property.

It is next assigned that the court erred in not requiring the jury to give a specific answer to interrogatory number 5. There was no error in this ruling of the court. The question submitted was not material ·to the issues involved. After the cattle had been delivered to Bryson, the agent of the company, it became immaterial as to the number shipped by him from Curtis to Kansas City. The ultimate question for the jury to determine was the number of cattle delivered by the plaintiff to the agent of the company, and not the number of cattle shipped by Bryson. And, again, the question is indefinite and uncertain, in this, that it did not fix the specific time of the shipment, and hence it should have been refused by the court. Where a special interrogatory is submitted to a jury, it should be clear and concise, to the end that the jury can give a direct answer thereto, and that it may not have a tendency to confuse or mislead the jury.

In *City of Lawton v. McAdams,* 83 Pac. 429, where this court had this same question under consideration, it was held that:

"The object of the statute is to elicit facts, and not mere fragments or items of evidence; hence, interrogatories that are calculated to mislead, confuse, or harrass the jury should not be submitted."

And moreover, the evidence disclosed that a large number of Edmisson cattle had been shipped to Kansas City, in various shipments. Bryson testifies that the total number of cattle shipped was 2578. There was no dispute on the part of the plaintiff as to the number of cattle that were shipped. The entire controversy was as to the number of cattle that were delivered by the plaintiff to the agent of the defendant, and the number converted after allowing the de-

fendant all that it was entitled to under and pursuant to the contract.

The testimony of Bryson as to the number of cattle that were shipped from Curtis to Kansas City, was allowed to go to the jury as a circumstance tending to corroborate him as to the number of cattle that were delivered by the plaintiff to Bryson as the agent of the company. Likewise, the testimony of Rooney, the employe of the defendant company at the stock yards at Kansas City, was allowed to go to the jury for the same purpose. Assuming that the jury had answered that 1556 head of cattle were shipped from Curtis to Kansas City, as testified to by Bryson, this would have been a circumstance tending to corroborate him, but could not have been decisive on the issue as to the number of cattle that in fact were delivered by the plaintiff to Bryson. And in answer to interrogatory number 4, the jury specifically found that the plaintiff, Edmisson, helped to gather and deliver to Bryson, 1710 head of cattle. And this was the ultimate question of fact to be determined by the jury on this issue.

Finally, it is contended that the court erred, during the course of the trial, in commenting on portions of the evidence. We have carefully examined the records referred to by counsel for the plaintiff in error, and we are unable to find that any exceptions were taken to any remarks made by the court. Nor was this question raised on the motion for a new trial. Hence, this assignment of error is not available. If counsel desired to avail themselves of any objectionable remarks or misconduct of the trial judge during the course of the trial, it was their duty to preserve an exception at the time. Such objections cannot be raised for the first time in the appellate court.

McCabe *etc.* Con. Co. v. Wilson.

Finding no error in the record which would justify a reversal of the cause, the judgment of the court below is affirmed.

Pancoast, J., who presided in the court below, not sitting; all the other Justices concurring.