THE ATCHISON, TOPEKA & SANTA FE RAILWAY COM-
PANY V. LYDIA E. BURKS.

No. 15,635.   (96 Pac. 950.)

SYLLABUS BY THE COURT.

1. PRACTICE, SUPREME COURT — *Intermediate Orders — Review.*
An order for an inspection and copy of documents, made under section 368 of the code, is reviewable after judgment as an intermediate order involving the merits.

2. EVIDENCE—*Discovery—Order for an Inspection and Copy of Documents.* Such an order, granted upon an unverified motion, without proof of the existence of the described documents and possession or control of them by the adverse party, is erroneous.

3. ———— *Same.* Matters of procedure under the code section referred to discussed.

4. ———— *Admissions by a Corporation—Reports of Agents.* In an action against a railway corporation for damages for personal injuries alleged to have been occasioned by a defective coupling apparatus, reports of its car inspectors concerning the condition of the coupler, whether based upon investigations made before or after the injury, can not be received in evidence as admissions by the defendant of the facts stated in the reports, unless such reports have been adopted or promulgated in an authoritative way by some official having power to bind the corporation by admissions.    ·

5. ———— *Notice to a Corporation—Reports of Agents.* Reports of the character described, duly received according to some regulation or customary practice, are admissible in evidence to prove notice to the company of their contents.

Error from Neosho district court; LEANDER STILL-
WELL, judge. Opinion filed July 3, 1908. Reversed.

*William R. Smith, O. J. Wood,* and *Alfred A. Scott,* for plaintiff in error.

*H. P. Farrelly, Thomas R. Evans, W. R. Cline,* and *J. Q. Stratton,* for defendant in error.

The opinion of the court was delivered by

BURCH, J.: The plaintiff recovered damages suffered on account of the death of her husband, Warren A. Burks, occasioned by the negligence of the defendant. At the time he was injured the deceased was engaged in an attempt to make a coupling of freight-cars. On the trial of the action it became material whether the coupling device of one of the cars was defective, and whether the defendant had notice of the defect.

Previous to the time the case was called for trial the plaintiff served upon the defendant a notice demanding an inspection and copy, or permission to take a copy, of the report of car inspector L. H. Klein, or any other car inspector or person employed by the defendant, relating to inspections of the car in question made shortly before and shortly after the date of the casualty. The defendant made no response, and the plaintiff filed an unverified motion for an order requiring compliance with the demand. The record of the proceedings at the hearing of this motion recites that the plaintiff introduced in evidence the demand for an inspection and copy of the documents referred to, and that the court, having heard the motion and demand and proof of service and having duly inspected the same, and having heard the argument of counsel and having been duly advised, made an order in terms as prayed for. This order was duly excepted to, and was ignored.

At the trial the plaintiff offered in evidence her affidavit stating that reports of the character described in the notice, motion and order had been made to the defendant, and stating what they contained. She averred that the defendant's inspectors made reports,

both before and after the accident, showing that the coupler in question was defective. The offer was made in lieu of the reports themselves. The defendant objected, challenging the existence of the documents described, asserting that no foundation had been laid for the introduction of the affidavit, and maintaining that its contents were secondary and hearsay evidence only. The court met the objection in the following manner:

"My idea is this: I think, taking the proceedings that have heretofore been had, the application made to the court for permission to take a copy of this report, and the order that was made by the court, and the affidavit now filed by the plaintiff, that this is at least *prima facie* evidence there was such a report, but the defendant says there was n't any. Now, then, I will give the defendant an opportunity to show there was no such report, if the defendant wishes to do so."

The defendant elected to rely upon the legal questions presented, the affidavit was read to the jury, and the court instructed the jury that they were at liberty to presume that reports had been made as stated in the affidavit, and were at liberty to consider such alleged reports in connection with all the other evidence in the cause in determining what the condition of the coupler was when Burks was killed. Exceptions by the defendant were duly saved.

Error is assigned upon the order requiring the defendant to permit an inspection and copy of the alleged reports, upon the admitting in evidence of the plaintiff's affidavit relating to such reports, and upon the instruction to the jury regarding them. The statute involved is section 368 of the code of civil procedure, which reads as follows:

"Either party or his attorney may demand of the adverse party an inspection and copy, or permission to take a copy of a book, paper or document in his possession or under his control, containing evidence relating to the merits of the action or defense therein. Such demand shall be in writing, specifying the book, paper or document with sufficient particularity to enable the

other party to distinguish it; and if compliance with the demand within four days be refused, the court or judge, on motion and notice to the adverse party, may in their discretion order the adverse party to give to the other, within a specified time, an inspection and copy or permission to take a copy of such book, paper or document; and on failure to comply with such order the court may exclude the paper or document from being given in evidence, or if wanted as evidence by the party applying, may direct the jury to presume it to be such as the party by affidavit alleges it to be. This section is not to be construed to prevent a party from compelling another to produce any book, paper or document when he is examined as a witness."

The order in question is clearly reviewable under section 542 of the civil code, permitting the reversal, vacation or modification of intermediate orders involving the merits of an action or some part thereof. It is the manifest intention of the statute to reach the merits of the action. Its language so indicates, and its provisions are so framed. A party might altogether fail on the merits if he were denied the benefit of the order provided for, and his adversary might be able to trace defeat on the merits entirely to an affidavit admitted in evidence because of non-compliance with the order, or to the exclusion of documents which he desired to offer but which he had declined to allow to be inspected and copied. The order, however, is of a purely intermediate character. Its consequences can not be observed until they are registered in the result of the trial on the merits, and hence it is not reviewable until after judgment.

The procedure to obtain the order is by motion and notice, after demand and non-compliance. No provision is made for the framing of issues on the motion. The adverse party is not called upon to show cause why the order should not be made, but the party applying must establish his right to it before the order may lawfully be granted.

To entitle a party to the order there must be in.

existence a book, paper or document to be inspected and copied, and this book, paper or document must be in the possession or under the control of the adverse party.    These facts are conditions precedent, and neither of them can be taken for granted.    The circumstance that a demand has been made and ignored does not prove or tend to prove that they exist.    The circumstance that a motion has been made asserting their existence does not afford any evidence of the truth of the assertion.    The facts must be proved in some juridical way before the court is authorized to proceed, and the burden is upon the applicant to make the proof. The adverse party need not move until something has been presented which he needs to combat.

In most jurisdictions either statutes or rules of court provide for a verified application or for an affidavit to accompany the motion; in others rules derived from the old chancery practice relating to discovery exist.    No rule of procedure has fallen under the observation of the court sanctioning the granting of an order without any showing other than the naked assertion of an unverified motion.    It has been held that the inviolable right to be secure against unreasonable searches is involved.    The right to immunity from the production of incriminating evidence and the right to protect privileged documents from disclosure may be jeopardized, and in many other respects the remedy is of such gravity and importance that it can not be administered in any other than a judicial way.    It is not necessary that the facts alluded to shall be established beyond all controversy, and in many instances slight evidence may suffice, but their existence must fairly and reasonably be made to appear by some legally recognized method, in the absence of an admission dispensing with proof.

These propositions are not contested by the plaintiff. Her position seems to be that when the court made the order it was judicially determined that the desired documents were in existence and in the defendant's

possession or control, and hence that an incontestable foundation was laid for the introduction of the affidavit. The difficulty with this argument is that it does not meet the challenge of the first assignment of error. In legal effect it was judicially determined when the order was made that the documents in question were in existence and in the defendant's possession, but that determination was not made according to law. The record conclusively proves that the motion was unverified, that no affidavit was filed in support of it, that the only evidence introduced was the demand and proof of service, and that the court acted upon an inspection of the papers merely. Indeed, it is not disputed that no evidence was offered upon which to base an adjudication of fact, and, the record having been made up to cover the question, it can not be aided by presumption. It is only in respect to subjects concerning which the record is silent that presumptions may be indulged to support a judgment or order.

The court at the trial fully appreciated the necessity for proof of the facts in controversy before the affidavit could be admitted, and that no such proof existed until the affidavit came in, but its effort then to solve the situation was nugatory. The plaintiff was not making an application for a new order, and was not offering the affidavit in support of the order already made. She was demanding that the affidavit be received because an order theretofore lawfully made had been disobeyed. The defendant was not asking for a further hearing, but was contending that facts essential to the validity of the order were missing. No doubt a party may absolve himself at the trial on the merits by showing pertinent facts disabling him from complying with a valid order, but the time to try the fundamental facts upon which an order must be based is when the motion is heard. Orderly procedure requires that the progress of the trial on the merits should not be interrupted by what may be a long-drawn-out and

fiercely contested preliminary matter. It may be of
the utmost importance to one or both of the parties.
that the hearing upon the right to an inspection should
not be delayed until the trial is on. But, beyond this,.
there should be no order until the indispensable requi--
sites prescribed by the statute are established, and an.
order granted without authority can not be validated
by a subsequent showing of sufficient grounds for it.

It is said that the granting of the order rested in the.
discretion of the court, and that the exercise of such
discretion is not reviewable except in a clear case of
abuse. The opportunity for the exercise of discretion.
does not arise until there is a field for its operation.
The court has no discretion to order an inspection of a.
document of whose existence and locality it is ignorant.

The South Carolina code is substantially the same as.
that of this state. In the case of *Jenkins v. Bennett,*
40 S. C. 393, 18 S. E. 929, the notice of the hearing of
a motion for an order of inspection stated that the
motion would be based upon the pleadings in the action
and the accompanying affidavit of the plaintiff. The
affidavit referred to certain plans and specifications.
and to a contract which it was said "contain evidence
relating to the merits of the above-named action."
(Page 399.) On appeal an order based on this showing
was reversed, the court saying:

"We think it clear that before this somewhat extra--
ordinary power should be exercised the moving party
should show, at least *prima facie,* such fact or facts as.
would enable the court to exercise its discretion as to
whether such a power as is invoked should be exer-
cised. Now, in this case no facts of any kind are stated
in the affidavit upon which the motion was based. The
bald statement that the papers desired to be inspected
'contain evidence relating to the merits of the action'
is nothing more than an expression of the plaintiff's
opinion, and can not be regarded as a statement of
any fact. . . . It seems to us that the order was
erroneously granted, and should, therefore, be reversed;
not because the circuit judge erred in the exercise of
his discretion, but because the moving papers showed

no facts upon which his discretion could be exercised." (Pages 400, 401.)

The existence of facts essential to its validity not having been established by affidavit of the plaintiff or otherwise, the order granting the right to inspect and take copies was erroneous. Being erroneous, it furnished no foundation for the admission of the affidavit in evidence. The affidavit having been admitted because of non-compliance with the order, and having contained matter of the utmost importance in the determination of vital questions in the case, the error was prejudicial.

Aside from the relation of the affidavit to the order, objection was made to the contents of the affidavit because they were hearsay, and the point was specifically made that if the original inspector's reports were offered they would be hearsay. The question is whether these agent's reports are admissions of the defendant company as to the defective condition of the coupling apparatus. The rule of law is correctly formulated, so far as public corporations are concerned, by Judge Dillon:

"An admission by a corporation of a fact or of a liability, duly and properly made, is, of course, evidence against it. But a municipal corporation, by accepting —that is, receiving—the report of a committee of inquiry, does not admit the truth of the facts stated therein; and such a report, though accepted by a vote of the corporation, is not admissible in evidence against it." (1 Dill. Mun. Corp. [original section 242], 4th ed., § 305.)

The same doctrine governs in the case of a private corporation, and is stated in the second edition of Abbott's Trial Evidence, at page 64, as follows:

"An official statement or report received by the corporation or board from one acting as officer, and accepted and adopted by them, is competent evidence against the corporation, and those bound by its acts, without further proof of the appointment of the officer; but a report to a corporation or board is not made ad-

missible in evidence against it by the mere fact that it was received and 'accepted' by it, except for the purpose of charging it with notice of the contents."

It can make no difference in the application of the rule whether the investigation and report are made before an accident has occurred, with a view of making repairs if necessary, improving the equipment or service or preventing accident, or whether they occur after an accident, with a view of ascertaining the circumstances or cause. The commission of the inspector is the simple obtaining of information upon which the company may act, and when he makes a report of what he has observed the corporation does not speak through him as in cases where a principal sends his agent out to transact his business with the public, so that whatever the agent may say or do in the prosecution of the enterprise while he has it in charge is the speech and act of the principal. The report is only a recital of the inspector's observation, and does not commit the company to its truth until it is taken up and adopted as the position of the company by some one having authority to bind it in such matters. In litigation between the company and a third person the inspector is a competent witness as to what he saw, but the existence of the state or condition in controversy can not be proved against the company by his mere declaration concerning it.

Suppose that several officials having authority, but acting independently, should cause a bridge or building or piece of track or machinery to be inspected by different subordinates, and that the reports should disagree; suppose an accident should occur in the operation of a train, that the rules should require every employee connected with the train to investigate and report the physical facts, and that the reports should disagree: What is the truth, and which of these reports, made by agents designated for the purpose, and who therefore act "in the line of duty," are admissions by the com-

pany of the state of facts narrated? Considerations
like these led Mr. Chief Justice Bleckley, distinguished
alike for his keen penetration and sound judgment, to
say:

"It surely can not be sound law to hold that by col-
lecting information, whether under general rules or
special orders, and whether from its own officers,
agents and employees or others, a corporation acquires
and takes such information at the peril of having it
treated as its own admissions, should litigation subse-
quently arise touching the subject-matter. As well
might it be considered that any and every suitor who
sends out agents to discover witnesses and collect facts
touching his rights or duties regarding a pending or
prospective lawsuit is to be met at the trial with the
communications made by or to such agents, as admis-
sions made by himself." (*Carroll v. The East Ten-
nessee, Virginia and Georgia Railway Co., and vice
versa,* 82 Ga. 452, 475, 10 S. E. 163, 6 L. R. A. 214.)

While investigating the condition of its own property
and affairs, taking the reports and opinions of its em-
ployees upon the subject, and considering what course
it ought to pursue, the corporation holds no relation
to the general public which enables third persons to
seize upon some intermediate step or statement in the
proceeding apparently to his advantage and say that a
final admission has been made at that point. But let
it be conceded that the inspection of coupling appliances
on the cars of its trains is a branch of a railway com-
pany's business which brings its inspectors in contact
with the public, and what is the result? It is elemen-
tary law that to bind his principal the declarations of
an agent must be contemporaneous with the event in
question, must be made in the transaction of the busi-
ness committed to his charge and as a part of it, and
must be calculated to unfold its nature and to illustrate
and explain its character so that acts and declarations
combine and harmonize to form one transaction. Dur-
ing an inspection only those declarations could bind the
company which would illustrate, explain and character-

ize the work of making the inspection. After an inspection has been completed a narration of the things impressed upon the inspector's senses would fill none of the requirements of an admission; and, the function of binding the company by admissions not having been delegated to the inspector, the making of the report itself, considered as a part of his business, could not include such a consequence.

The following cases contain discussions of the principles involved which support these views: *Carroll v. East Tennessee, Virginia and Georgia Railway Co., and vice versa,* 82 Ga. 452, 10 S. E. 163, 6 L. R. A. 214; *Powell v. Northern Pacific Railroad Co.,* 46 Minn. 249, 48 N. W. 907; *North Hudson County Railway Co. v. May,* 48 N. J. Law, 401, 5 Atl. 276; *Insurance Company v. Mahone,* 88 U. S. 152, 22 L. Ed. 593; *Wabash R. R. Co. v. Farrell,* 79 Ill. App. 508; *The C., C., C. & St. L. Ry. Co. v. Ullom, Adm'x,* 20 Ohio C. C. 512; *Doyle v. St. Paul, Minneapolis & Manitoba Ry. Co.,* 42 Minn. 79, 43 N. W. 787; *Verry v. The B., C. R. & M. R. Co.,* 47 Iowa, 549, 551; *Reem v. St. Paul City Ry. Co.,* 77 Minn. 503, 80 N. W. 638, 778; *Wellington v. Boston & Maine Railroad,* 158 Mass. 185, 33 N. E. 393; *Bessemer Coal, Iron & Land Co. v. Doak* (Ala.), 44 South. 627, 12 L. R. A., n. s., 389.

The case of *Vicksburg, &c., Railroad Co. v. Putnam,* 118 U. S. 545, 7 Sup. Ct. 1, 30 L. Ed. 257, might seem on first impression to be an opposing authority, but it probably does no more than carry out the doctrine expressed in the quotation from Abbott's Trial Evidence, *supra,* that when a report has been adopted and promulgated as that of the corporation it is admissible in evidence against it. In that case the superintendent of a railroad, who doubtless was regarded as an agent with power to know and declare the condition of the road, had made printed reports to the board of directors, which were admitted in evidence in a personal-

injury case. The court devoted a single sentence to the subject, which reads thus:

"The reports made by the superintendent to the board of directors in the course of his official duty were competent evidence, as against the corporation, of the condition of the road." (Page 553.)

The decision in the case of *Va-Carolina Chem. Co. v. Knight,* 106 Va. 674, 56 S. E. 725, is sustainable upon the same theory, although such may not have been the court's view. In that case it appeared that it was the practice of the defendant's superintendent to make an immediate report in case of an accident to an employee, and to send it to the main office, which then forwarded the report to an insurance company that had undertaken to indemnify the defendant against loss. That course having been pursued, the document was admitted in evidence as an admission of the defendant that the party injured was an employee.

The following cases reach conclusions different from those expressed above: *Texas & Pacific Ry. Co. v. Lester,* 75 Tex. 56, 12 S. W. 995; *Lipscomb v. Railroad Co.,* 65 S. C. 148, 43 S. E. 388; *Lynchburg Telephone Co. v. Booker,* 103 Va. 594, 50 S. E. 148; *Krogg v. The Atlanta and West Point Railroad et al., and vice versa,* 77 Ga. 202, 2 Am. St. Rep. 77.

In some jurisdictions the position is taken that reports of the kind in question are confidential communications, and that such communications are not admissions, the rule of privilege being applied. (*Ex Parte Schoepf,* 74 Ohio St. 1, 16, 77 N. E. 280; *Cully v. Northern Pac. R. Co.,* 35 Wash. 241, 77 Pac. 202; *In re Devala Provident Gold Mining Company,* L. R. 22 Ch. Div. [Eng.] 593.) Under the statute of this state defining what are privileged communications, such reports in the hands of the company would not be privileged. What their status might be if in the hands of the company's attorneys need not be discussed.

The court is of the opinion the inspector's reports.

offered in evidence through the medium of the plaintiff's affidavit were inadmissible to prove the condition of the coupling appliance to which they referred.

The plaintiff has made no contest and has cited no authorities upon the subject just discussed, but has chosen to rely entirely upon the proposition that the reports in controversy established notice to the defendant of the defective condition of the coupling device. The proposition is too broad. Such reports, when duly received according to some regulation or customary practice, are notice to the company of their contents. Whether they afford notice of the defective condition of a coupler depends upon whether defects in the coupler are proved, and the proof must be by evidence other than the reports themselves. However, the judgment can not be saved on the point urged, because the court specifically instructed the jury, as before noted, that the reports might be considered in determining the condition of the coupler when Burks was killed.

Since the case must be reversed, some further observations upon the procedure involved are necessary. The plaintiff argues that she needed to see the inspector's reports in order to determine who should be subpœned as witnesses to show the defective condition of the coupler. An order of inspection can not be granted for any such purpose. The only right to be conserved is that of a party to have the evidence which is contained in a document in the hands of his adversary.

The motion for the order should contain all the facts entitling the applicant to the relief desired. It is not enough that according to *a priori* reasoning the desired documents should be in the opponent's possession. It is not enough to say that the documents referred to contain evidence relating to the merits. The facts should be stated with reference to every essential matter. The determination of the question of materiality

at the hearing on the motion need not be absolute, and is not conclusive, but the court should be enabled to see for itself that a fair case of materiality is presented.

In this case the affidavit of the plaintiff contained a large number of statements in no way descriptive of the documents in controversy, some of which were highly prejudicial to the defendant. Nothing should be read to the jury except the allegations showing the character of the documents which have not been produced in obedience to the order—that is, the statements which take the place of the documents themselves.

If an order of inspection has been wrongfully disobeyed, and an affidavit has been received in lieu of the documents, the adverse party is then concluded. He has no right to cross-examine the affiant upon the statements contained in the affidavit.

The judgment of the district court is reversed, and the cause is remanded for a new trial.