## LANDON v. MOREHEAD.

No. 1941.   Opinion Filed August 20, 1912.

Rehearing Denied October 8, 1912.

(126 Pac. 1027.)

1.  **APPEAL AND ERROR**—Review—Rulings on Pleadings—Harmless Error.  A refusal of the trial court to sustain a motion to strike out parts of a pleading which are surplusage, or which consist of immaterial averments or of evidential facts, is harmless error, unless it appears that the matters which the court refused to strike out materially and prejudicially affected the interest of him who complains of the action of the court.

2.  **VENDOR AND PURCHASER**—Option to Purchase—Assignment.  An option for the purchase of lands, made to one named therein, his heirs or assigns, is, by the express terms of the option, assignable.

3.  **FRAUDS, STATUTE OF** — Option—Assignment—Executed Contract.  Where an option to purchase lands runs to the optionee or his assigns, and is assigned to third persons for an agreed price, an action to recover the consideration, brought by the assignor, is not affected by the statute of frauds, the contract being an executed one; the consideration alone remaining unpaid.

Landon v. Morehead.

4. **PLEADING—Reply—Departure.** Reply examined, and its allegations found not to constitute a departure from the allegations of the amended petition.

5. **SAME—Demurrer.** Although the allegations of a reply may constitute a departure, yet the objection cannot be taken advantage of by demurrer, or objection to the introduction of evidence on the pleading.

6. **DISCOVERY—Inspection of Documents—Possession and Control.** In a proceeding under section 5888, Comp. Laws 1909, to obtain of the adverse party an inspection and copy, or permission to take a copy, of paper or document, it must first be established that such paper or document is in existence, and, if this be shown, that it is in the possession of, or under the control of, said party.

7. **EVIDENCE—Secondary Evidence—Notice to Produce.** An order, made by the court or judge upon an unverified notice or demand for inspection, without proof of the existence of the described document, and possession or control of it by the adverse party, will not authorize the introduction of secondary evidence of the contents thereof; no further effort to procure said document being made, and there being no proof showing its loss or destruction.

8. **WITNESSES—Adverse Party—Production of Documents.** Any party to a civil action or proceeding may compel any adverse party to such action or proceeding, at the trial, or by deposition, to testify as a witness in the same manner and subject to the same rules as other witnesses, and by the service of subpoena may require such party to bring with him any book, writing, or other thing under his control, which he is bound by law to produce as evidence.

9. **EVIDENCE—Secondary Evidence—Contents of Writing—Proof by Parol.** Parol evidence of the contents of a written option and a written assignment thereof was improperly admitted, where no sufficient steps were taken to obtain an inspection or production of the writings, as required by section 5888, Comp. Laws 1909, allowing a party to demand of the adverse party an inspection and copy of papers in his possession or under his control, containing relevant evidence, and providing that, on failure to comply with the order to permit such inspection, the court may direct the jury to presume the papers to be as the party by affidavit alleges them to be, and where the party seeking such evidence does not require the adverse party to appear as a witness, and to bring with him the papers in question, as provided by section 5844, Comp. Laws 1909, authorizing a subpoena to be directed to a witness, requiring him to bring with him any paper under his control, which he is bound by law to produce as evidence, and did not show that the instruments themselves were lost or destroyed.

(Syllabus by Sharp, C.)

*Error from Superior Court, Pottawatomie County;*
*George C. Abernathy, Judge.*

Action by J. O. Morehead against J. E. Landon, W. J. Howey, and J. E. Dunn, partners. Judgment for plaintiff against defendant J. E. Landon, and against J. E. Landon, W. J. Howey, and J. E. Dunn, as partners, for $30,460, from which defendant J. E. Landon appeals. Reversed and remanded.

*Paul F. Cooper,* for plaintiff in error.

*Blakeney & Maxey* and *A. W. Johnson,* for defendant in error.

Opinion by SHARP, C. On the 17th day of February, 1908, defendant in error, hereinafter referred to as plaintiff, commenced his action against defendants, W. J. Howey, J. E. Landon, and J. E. Dunn, in the district court of Pottawatomie county, and caused summons to be issued, directed to the sheriff of Pottawatomie county, commanding him to summons the above-named defendants. Process was served on defendant J. E. Landon February 19, 1908. No service of summons was ever had on defendants Howey and Dunn, and at no time was their appearance entered.

The amended petition, among other things, charged that defendants were, on the 1st day of January, 1906, and for more than a year thereafter, partners in business, under the partnership name of the Mexico Land Company; that on or about the 1st day of November, 1905, the plaintiff was the owner of a certain written option, dated about the 1st day of April, 1905, upon a certain tract of land situated in the state of San Luis Potosi, in the republic of Mexico, consisting of 36,860 acres, and that said tract was known as the Warburton and Jackson tract; that plaintiff's option was in writing, and provided that Santiago H. Warburton and J. P. Jackson, owners thereof, would, upon payment of $50,000 within twelve months thereafter, convey by good and sufficient general warranty deed the said tract to the plaintiff, his heirs and assigns; that on or about the 27th day of November, 1905, plaintiff entered into an oral agreement with the defend-

ants, by the terms and conditions of which he agreed to assign and transfer to said defendants, and defendants agreed, within a reasonable time, to pay plaintiff for such assignment and transfer $25,000, and that, in pursuance of said oral agreement, the plaintiff did assign, in writing, the said option to the said defendants, and that defendants, in consideration thereof, agreed to pay plaintiff the sum aforesaid; that defendants took possession of said lands, and the said Santiago H. Warburton and J. P. Jackson recognized and consented to such assignment, and that said defendants thereupon assigned and conveyed said tract of land to, the Mexico-United States Land & Immigration Company, and received therefrom a consideration of about $100,000; that plaintiff, after having waited a reasonable time, had made demand for payment of said defendants, which they failed, refused, and neglected to make. Plaintiff, however, alleged that he could not obtain a copy of the option therein referred to, because of the fact that the same was delivered to the defendants, and that he did not retain a copy thereof, and that the option and assignment thereof was then, and had been since the date of the execution of the latter, in the possession of said defendants.

Demurrer to amended petition being overruled, defendant Landon, on the 11th day of November, 1908, filed his separate answer, consisting of a general denial and five separate additional paragraphs containing specific denials. Defendant denied specially that he, Howey, and Dunn were ever partners, and further denied that plaintiff was, at the time charged, the owner of an option or offer to purchase or sell the lands described in plaintiff's amended petition, and denied that there was a tract of land in the republic of Mexico known as the Warburton and Jackson tract, or that said Santiago H. Warburton and J. P. Jackson owned any such tract at or near the place described in plaintiff's amended petition, or at any other time, and denied that plaintiff ever contracted with said Warburton and Jackson for an option or offer to purchase or sell said land, or that plaintiff ever had such an option or interest in said land, or option or offer, or a contract, either for the purchase or sale of said land, such as he could assign, sell, transfer, or convey to defendant or any other

person.  Defendant denied that, acting either for himself or as a partner of said Howey and Dunn, he ever entered into a contract with plaintiff for the purchase of an offer or option to purchase or sell said lands for the said sum of $25,000, or any other sum or consideration, and denied that plaintiff ever assigned, transferred, and delivered an option or offer to purchase or sell said lands, either to defendant personally, or to defendant and W. J. Howey and J. E. Dunn as partners.  Defendant further denied that either he or the alleged partnership ever purchased said lands from the said Warburton and Jackson, or either of them, or from any other persons, or that he or said partnership ever sold said tract of land to the said Mexico-United States Land & Immigration Company, or any other person, for any consideration or at all, but that said answering defendant, together with other associates, did organize said last-mentioned company under the laws of the territory of Oklahoma, and which said corporation was protocolized and licensed to do business under the laws of the republic of Mexico, at the city of Valles, in the state of San Luis Potosi, and that said corporation afterwards purchased direct from the owners thereof said land, the name of the grantors, number of hectares, square meters, and ares being set forth in full, and the aggregate of which said purchase constituted about 27,737 acres.  It was further denied in the answer that either said defendant or the said W. J. Howey, J. E. Dunn, and said defendant, as partners, ever sold to the said Mexico-United States Land & Immigration Company any land described in plaintiff's petition for the said sum of $100,000, or any other sum or consideration.

To this answer plaintiff replied, and defendant filed a motion to strike from the reply certain portions thereof, which motion was, on the 25th day of September, 1909, overruled.  Thereupon defendant demurred to said reply, which demurrer was thereafter overruled.

On the 17th day of June, 1909, on motion of plaintiff, the case was transferred from the district court to the superior court of Pottawatomie county.

Twenty-nine assignments of error are urged in the brief of counsel, the first of which charges error in overruling paragraphs 3, 4, 5, and 6 of defendant's motion to make the petition more definite and certain, and to strike out certain parts of it. The amended petition in part covered the objections made, but in other respects did not. Ordinarily a motion to make more definite and certain is, in a large measure, addressed to the sound discretion of the trial court, and its ruling thereon will not be reversed, except for an abuse of discretion. *Chicago, R. I. & P. Ry. Co. v. Logan et al.,* 23 Okla. 707, 105 Pac. 343, 29 L. R. A. (N. S.) 663; 6 Enc. Pl. & Pr. 280. In view, however, of our conclusion, it will not be necessary to further comment on this assignment. Nor is that part of the motion well taken which sought to strike out a portion of the petition by reason of irrelevant and redundant statements contained therein. Section 5659, Comp. Laws 1909, provides that redundant or irrelevant matter contained in a pleading may be stricken out on motion of the party prejudiced thereby. The refusal of the trial court to strike out part of a pleading which is surplusage, or consists of immaterial averments or of evidential facts, is harmless error, unless it appears that the matters that the court refused to strike out materially and prejudicially affected the interest of him who complains of the action of the court. *Terrapin v. Barker,* 26 Okla. 93, 109 Pac. 931. The action of the court in the particulars complained of did not constitute such error as, alone, would warrant a reversal.

It is next urged that the court erred in overruling the defendant's demurrer to plaintiff's amended petition for two reasons: (1) That there was no legal subject-matter of contract involved in the alleged transaction; (2) that the transaction came within the statute of frauds, and was for that reason void. Upon the first proposition, defendant's argument proceeds upon the theory that the alleged option given Morehead by Warburton and Jackson was such that the right acquired under it was not a transmissible right of property; that an option is a personal privilege merely; and that, even though Morehead had an option, he could not assign or transfer any rights therein to the defendants.

Numerous cases are cited in support of this contention. Apparently counsel have overlooked the allegation in the amended petition which charged that the option was given by Warburton and Jackson to the plaintiff, his heirs and assigns. An option, giving the right to purchase property within a fixed time, is a personal privilege, limited to the optionee, if made to him exclusively; but where the right is given, not to the optionee alone, but to him or his assigns, the right of assignment thereof is provided for in the option itself.

In *Fulton v. Messenger*, 61 W. Va. 477, 56 S. E. 830, in discussing the assignability of options, the court said:

"An optional contract, giving the right to purchase property within a certain time, and upon certain conditions, is often a valuable right; but, under the authorities above cited, it is a personal privilege, limited to the optionee, where there is no provision for its assignment. But where the parties have expressly stipulated for an assignment, it is difficult, indeed, to find a reason why this may not be done. It cannot be longer said to be personal to the optionee, because, by the express terms of the contract, the optioner has agreed to sell and convey to the optionee or his assigns. *Kerr v. Day*, 14 Pa. 112 [53 Am. Dec. 526]; *Napier v. Darlington*, 70 Pa. 64; *Bank v. Baumeister*, 87 Ky. 6 [7 S. W. 170]; *Laffan v. Naglee*, 9 Cal. 662; 70 Am. Dec. 678; *House v. Jackson*, 24 Ore. 89 [32 Pac. 1027]; *Sutherland v. Parkins*, 75 Ill. 338."

Other cases in point are: *Myers v. Stone et al.*, 128 Iowa, 10, 102 N. W. 507, 111 Am. St. Rep. 180, 5 Ann. Cas. 912; *Simmons v. Zimmerman*, 144 Cal. 256, 79 Pac. 451, 1 Ann. Cas. 850; *Rease v. Kittle et al.*, 56 W. Va. 269, 49 S. E. 150; *House v. Jackson*, 24 Ore. 89, 32 Pac. 1027; *Perry v. Paschal*, 103 Ga. 134, 29 S. E. 703; *Gustin v. Union School Dist.*, 94 Mich. 502, 54 N. W. 156, 34 Am. St. Rep. 361.

Was the assignment of the option within the statute of frauds? Were it admitted that the plea of the statute of frauds may be thus raised, and, further, were we to concede that an unaccepted option vested in the optionee an interest in real property (neither of which we admit), yet the plea could not be successfully maintained, for the reason that under the allegations of the petition the transaction was an executed one, not only between

the immediate parties to the assignment, but between the assignees and the optioners, Warburton and Jackson. The action is not one to enforce the terms of an executory contract concerning an interest in real property, but is one brought to recover a specific sum of money, the sale price of an option. Even were it true that the contract was unenforceable by reason of the statute of frauds, it having been performed, the rights of the parties are no longer affected by the statute. *Kuhn v. Poole,* 27 Okla. 534, 112 Pac. 962, and cases cited.

In *Atchison, T. & S. F. Ry. Co. v. English,* 38 Kan. 110, 16 Pac. 82, referring to the statute of frauds of that state, the court said:

"The defendant further says that plaintiff cannot recover upon a verbal contract for the sale of lands. This was not a contract, within the statute of frauds. It was not a contract for the sale of lands; it was the sale itself. The contract was perfected by giving the deed. This action is for damages sustained by plaintiff, because the defendant refused to give him his pass for life over its road. The pass was promised to be given as the price of the land deeded. There is no provision of our statute which precludes a recovery for the price of lands actually conveyed, even though the agreement concerning the price be oral. Reed on Frauds, sec. 658; *Hodges v. Green,* 28 Vt. 358; *Bowen v. Bell,* 20 Johns. [N. Y.] 338 [11 Am. Dec. 286]; *Wilkinson v. Scott,* 17 Mass. 249; *Holland v. Hoyt,* 14 Mich. 238; *Tripp v. Bishop,* 56 Pa. 424; *Tuthill v. Roberts,* 22 Hun [N. Y.] 304."

The demurrer to the petition was therefore properly overruled.

The third assignment complains of the action of the court in overruling the defendant's motion to strike out a part of the reply, in that the same contains allegations constituting a departure from the allegations contained in the amended petition. The proper test of a departure in a reply is the question whether evidence of the facts alleged in it would, if received, be contradictory of the allegations of the petition. 6 Enc. Pl. & Pr. 460, 462; Bliss on Code Pleading (3d Ed.) sec. 396; *Baker v. Long,* 17 Kan. 341; *Johnson v. State Bank of Seneca,* 59 Kan. 250, 52 Pac. 860. The allegations contained in the reply are not contradictory of the allegations contained in the amended petition,

and at best constitute a mere repetition, in a slightly changed form, of matter already alleged.

The fourth assignment, that the court erred in overruling defendant's demurrer to the reply, while, like the preceding assignment, it is not argued by counsel, is likewise not well taken, as this court adheres to the rule that, although the allegations of a reply may constitute a departure, yet the question is one that cannot be taken advantage of by a demurrer or objection to the introduction of evidence upon the pleadings. *St. Paul Fire & Marine Ins. Co. v. Mountain Park Stock Farm Co.,* 23 Okla. 79, 99 Pac. 647; *Wey et al. v. City Bank of Hobart,* 29 Okla. 313, 116 Pac. 943; *Purcell v. Corder,* 33 Okla. 68, 124 Pac. 457.

The sixth, seventh, and nineteenth assignments of error concern the admission of testimony, particularly the testimony of the plaintiff, which tended to show the contents of the original option, given December 20, 1904, at San Dequito, Mexico. As has already been seen, the amended petition charged that plaintiff was the owner of a certain written option, dated about the 1st day of April, 1905, on a tract of land in San Luis Potosi, Mexico, known as the Warburton and Jackson tract; that on the 27th day of November, 1905, plaintiff sold and defendants purchased said option for the consideration of $25,000, and that at the time plaintiff duly assigned, in writing, his option to purchase said lands; and that defendants agreed, in consideration thereof, to pay plaintiff, within a reasonable time, said sum of money. The option and assignment, it was charged, had been delivered to defendants, but which one of defendants it did not appear from the petition. The answer of defendant Landon put in issue the existence both of the written option and assignment thereof. The answer was filed November 11, 1908. The action came on for trial December 15, 1909. Proceeding obviously under section 5888, Comp. Laws 1909, plaintiff, on the 18th day of May, 1909, served upon counsel for defendant Landon a demand for inspection and copy, or permission to take copy, of certain papers alleged to be under the control of said defendant, containing evidence relating to the merits of said action, in which was an option executed by Warburton and Jackson, dated November 1, 1905,

and which, it was alleged, was delivered to said defendant on the 27th day of November thereafter. Thereafter, and on the 11th day of December of said year, a second notice was served upon the attorney for defendant Landon, asking for an inspection and copy, or permission to take copy, of a certain contract, dated at San Dequito, Mexico, about December 20, 1904, and which option, it was alleged, was delivered to defendant on or about the 15th day of April, 1905. Neither of these requests was complied with, and no further proceedings were taken thereunder until during the trial, when the court permitted one of plaintiff's attorneys to make an affidavit showing the service of said demands for inspection, which recited the fact that neither plaintiff nor his attorneys had been afforded an opportunity of inspecting or examining or making a copy of the papers or documents described in said notices. Thereupon counsel moved the court for an order requiring the defendants to submit for inspection and examination the papers and documents called for in said requests for inspection, and to take copies of the same, which leave, it appears, was granted, though no formal order appears in the record. The notices, as has been stated, were served on defendant Landon alone, and no effort to serve upon defendants Howey and Dunn was ever made; and it does not appear that the places of residence of these defendants were unknown to plaintiff. The amended petition did not charge that the option was in the possession of or under the control of defendant Landon; while the testimony of the plaintiff himself shows that the option was turned over to defendants Dunn and Landon at Kansas City, and that Dunn took it. The statute under which plaintiff attempted to proceed provides that "either party, or his attorney, may demand of the adverse party an inspection and copy, or permission to take a copy of a book, paper, or document in his possession, or under his control, containing evidence relating to the merits of the action or defense therein." The necessary prerequisite to this proceeding is that the adverse party must have in his possession, or under his control, the documents, an inspection or copy of which is desired. There was no effort made to show that defendant Landon at the time had possession of the op-

tions.   Plaintiff testified that Dunn had it; while defendant Lan-
don testified that he never saw or had in his possession or under
his control, and knew nothing of the existence, at any time, of
any such document.

Section 5888, Comp. Laws 1909, authorizing the inspection
of books, papers, and documents in the possession or under the
control of the adverse party, is identical with section 368 of the
Code of Civil Procedure (Gen. Stat. 1901, sec. 4816) of the state
of Kansas.   In *Atchison, T. & S. F. Ry. Co. v. Burks*, 78 Kan.
515, 96 Pac. 950, 18 L. R. A. (N. S.) 231, this provision of the
statute was considered at length.   At the trial of the case the plain-
tiff offered in evidence her affidavit, stating that the reports of
the character described in the notice, motion, and order had been
made to the defendant, and stating what they contained.   The
offer was made in lieu of the reports themselves.   The defend-
ant objected, challenging the existence of the documents de-
scribed, asserting that no foundation had been laid for the intro-
duction of the affidavit, and maintaining that its contents were
secondary and hearsay evidence only.   The court said:

"To entitle a party to the order, there must be in existence a
book, paper, or document to be inspected and copied, and this
book, paper, or document must be in the possession or under the
control of the adverse party.   These facts are conditions prece-
dent, and neither of them can be taken for granted.   The cir-
cumstance that a demand has been made and ignored does not
prove, or tend to prove, that they exist.   The circumstance that
a motion has been made, asserting their existence, does not afford
any evidence of the truth of the assertion.   The facts must be
proved in some judicial way, before the court is authorized to
proceed; and the burden is upon the applicant to make the proof.
The adverse party need not move until something has been pre-
sented which he needs to combat."

It was further said:

"These propositions are not contested by the plaintiff.   Her
position seems to be that, when the court made the order, it was
judicially determined that the desired documents were in exist-
ence, and in the defendant's possession or control, and hence that
an incontestable foundation was laid for the introduction of the
affidavit.   The difficulty with this argument is that it does not
meet the challenge of the first assignment of error.   In legal

effect it was judicially determined, when the order was made, that the documents in question were in existence, and in the defendant's possession; but that determination was not made according to law. The record conclusively proves that the motion was unverified; that no affidavit was filed in support of it; that the only evidence introduced was the demand and proof of service; and that the court acted upon an inspection of the papers merely."

Here there was no showing whatever that defendant Landon had the option in his possession or under his control, other than the demands of counsel, charging defendant with possession thereof, neither of which written demands was supported by the affidavit of either the plaintiff or his counsel. It was a mere assumption on the part of the plaintiff that defendant Landon, one of the three defendants, had in his possession the desired writing, and that in the face of the verified answer of said defendant denying the existence of said option, which had been on file more than thirteen months before the second demand.

In *Jenkins v. Bennett*, 40 S. C. 393, 18 S. E. 929, construing a similar statute, it was said:

"The existence of facts essential to its validity not having been established by affidavit of the plaintiff or otherwise, the order granting the right to inspect and take copies was erroneous. Being erroneous, it furnished no foundation for the admission of the affidavit in evidence. The affidavit having been admitted because of noncompliance with the order, and having contained matter of the utmost importance in the determination of vital questions in the case, the error was prejudicial."

The position is indefensible, particularly in a case where there are several defendants, and the injustice of the rule invoked cannot better be illustrated than by the testimony of the plaintiff himself, who testified that, while he gave the option to defendants Landon and Dunn, the latter took it. There was no sufficient compliance with the section of the statute mentioned to warrant the introduction of secondary evidence of the option; and, unless justified by some other recognized rule of evidence, it was error for the court to permit the plaintiff to give evidence as to its contents.

Section 5840, Comp. Laws 1909, provides that any party to a civil action or proceeding may compel any adverse party or person, for whose benefit such action or proceeding is instituted, prosecuted, or defended, at the trial, or by deposition, to testify as a witness in the same manner, and subject to the same rules, as other witnesses. *In re Abbott,* 7 Okla. 78, 54 Pac. 319. While section 5844 provides that the witness may be required to bring with him any book, writing, or other thing under his control, which he is bound in law to produce as evidence, and requiring him to attend at a particular time and place to give testimony as a witness. Thus the plaintiff could have obtained the desired testimony, or have made proof of its loss or misplacement. The deposition of the witness Howey was taken by plaintiff at Kansas City, and offered in evidence; but no attempt was made to show that this witness had the original option in his possession. The plaintiff testified that he had seen the defendant Dunn about two months prior to the giving of his testimony. No notice was served upon Dunn; nor was any effort made to take his deposition, or to procure the original instrument, or to lay the necessary predicate for the introduction of secondary evidence.

A fundamental in the rule of evidence is that which requires the production of the best evidence of which the case, in its nature, is susceptible. This rule naturally leads to the division of evidence into primary and secondary. Primary is that which we have just mentioned as the best evidence; that kind of proof which, under any possible circumstance, affords the greatest certainty of the fact in question. All evidence falling short of this in its degree is termed secondary. Such is the substitution of oral for written evidence. This class is divided by Greenleaf, in his work on Evidence (15th Ed.) sec. 85, into three classes, as follows:

"The cases which most frequently call for the application of the rule now under consideration are those which relate to the *substitution of oral for written evidence;* and they may be arranged into three classes, including in the *first* class those instruments which the law requires should be in writing; in the *second,* those contracts which the parties have put in writing; and in the

*third,* all other writings, the existence of which is disputed, and which are material to the issue." (Italics ours).

The written option falls within the latter, if not also within the two former, of the classes named. In order to render competent secondary evidence of a lost instrument, it must be first given in evidence that such a paper once existed, though slight evidence may be sufficient for this purpose, and that a *bona fide* and diligent search has been unsuccessfully made for it in the place it was most likely to be found (if the nature of the case demands such proof). *Barnes v. Lynch et al.,* 9 Okla. 156, 190, 59 Pac. 995; *Richardson et al. v. Fellner,* 9 Okla. 513, 60 Pac. 270; *Randolph v. Hudson,* 12 Okla. 516, 74 Pac. 946; *Cooke v. Board of County Com'rs,* 13 Okla. 11, 73 Pac. 270; *Pringey v. Guss,* 16 Okla. 82, 86 Pac. 292, 8 Ann. Cas. 412; *Drumm-Flato Com. Co. v. Edmisson,* 17 Okla. 344, 87 Pac. 311, affirmed in 208 U. S. 534, 28 Sup. Ct. 367, 52 L. Ed. 606; *Barton-Parker Mfg. Co. v. Miller Merc. Co.,* 18 Okla. 137, 89 Pac. 1128; *Shaw v. Mason,* 10 Kan. 185; *Roberts v. Dixon,* 50 Kan. 436, 31 Pac. 1083; *Perry v. Archard,* 1 Ind. T. 487, 42 S. W. 421. It is expected that the party offering such evidence should be able to show that he has, in good faith, exhausted, in a reasonable degree, all the sources of information and means of discovery which the nature of the case would naturally suggest, and which were accessible to him. The production of private writings in which another party has an interest may be had by a bill of discovery in proper cases, or in trials at law by a *subpoena duces tecum,* directed to a person who has such writings in his possession. These means may be resorted to to procure the instrument of writing when in the hands or under the control of the adverse party. Greenleaf on Evidence (15th Ed.) secs. 558, 559, 560.

There was no proof introduced at the trial that the alleged option given December, 1904, was lost; nor was there any effort to prove it. This instrument, as disclosed by the testimony, was last shown to be in the possession of defendant Dunn; but on the second day following the return of the verdict, in an *ex parte* affidavit attached to defendant's motion for a new trial, it was shown that Dunn was a resident of Oklahoma county. True, in

said affidavit, Dunn further stated that no such option was delivered to him; but the making of this subsequent affidavit could not cure the court's error committed at the trial, though sufficient to show that plaintiff could probably have taken Dunn's deposition, or served notice on him under the statute, if he had seen fit to do so. Therefore we must conclude that under no recognized rule of evidence was the testimony given by J. O. Morehead, which tended to show the contents of the absent option, competent. As was said by Johnston, C. J., in *Hull v. Allen*, 84 Kan. 207, 113 Pac. 1050:

"There is a further contention that appellant was not allowed to show the contents of letters said to have been written by himself and counsel, although he offered to prove a notice to produce the letters and noncompliance with the demand. It does not appear that appellant took the steps prescribed by section 365 of the Code of Civil Procedure (Gen. St. 1909, sec. 5960) to obtain an inspection or the production of the papers. *Railway Co. v. Burks*, 78 Kan. 515, 96 Pac. 950, 18 L. R. A. (N. S.) 231; *State v. Hinkley*, 81 Kan. 846, 106 Pac. 1088. Neither did he avail himself of the opportunity afforded of requiring the appellee to appear as a witness, and to bring with him the letters in question. Code Civ. Proc. sec. 323 (Gen. St. 1909, sec. 5917). Nor yet did he show that the letters themselves were lost or destroyed or inaccessible; and therefore parol proof of their contents was not admissible."

Other errors predicated upon the improper admission of testimony, in view of our conclusions, need not be considered.

The errors occurring at the trial in the admission of testimony, to which attention has been called, were of so prejudicial a nature as to necessitate a reversal of the judgment of the trial court. The judgment should therefore be reversed, and the case remanded for a new trial.

By the Court: It is so ordered.