SMITH, CAREY & COMPANY (WILLIAM McDERMOTT, Intervener, *Appellee*), v. THE ATCHISON LIVE STOCK COMPANY et al. (W. J. BAILEY, as Receiver, etc., *Appellant*).

No. 18,296.

SYLLABUS BY THE COURT.

1. EVIDENCE — *Order for Inspection of Books — Facts to be Shown on Application.* To entitle a party to an order under section 365 of the code of civil procedure it is necessary for him to produce evidence not only that he has given the opposite party notice of the application but also that the book, paper or document is in existence.

2. —————— *Same.* Although the allowance of such order without evidence of such fact or facts constitutes reviewable error, such error becomes not prejudicial when the party who procures the order does not, on the trial, rely upon affidavits to prove the contents of the book, paper or document, but produces the evidence of competent witnesses to prove both the existence and the contents of·such book, paper or document.

Appeal from Atchison district court.   Opinion filed July 5, 1913.   Affirmed.

*James W. Orr, W. P. Waggener,* and *J. M. Challiss,* all of Atchison, for the appellant.

*Charles J. Conlon,* and *J. L. Berry,* both of Atchison, for the appellee.

The opinion of the court was delivered by

SMITH, J.: The parties to this action are designated as plaintiff, defendants, intervener and receiver.  The plaintiff, Smith, Carey & Company, a corporation, brought action to recover an indebtedness against The Atchison Live Stock Company and four brothers, J. D., E. D., D. J., and E. J. Small, doing business as partners under the name of Small Brothers, and had a receiver appointed to convert the property of the defendants into cash and apply the money upon the order of the court to the payment of their claims.

The plaintiff, in its petition, alleged the expiration of the charter of The Atchison Live Stock Company October 2, 1905; that on August 15, 1906, the Small Brothers copartnership was indebted to plaintiff in the sum of $15,000, and executed to plaintiff two notes for $7500 each, and prior to October 2, 1905, had assigned to plaintiff practically all of the stock of The Atchison Live Stock Company.

The intervener interpleaded in the action, and in his petition asked judgment against the receiver for $8500 with interest at six per cent from December 1, 1906, the balance claimed to be due upon a loan made to the

live stock company June 1, 1905, and to secure the payment of which J. D. Small, as manager and an officer of the corporation, together with the Smalls individually, executed a promissory note. He alleged that the charter of the live stock company expired October 2, 1905; that the officers and directors thereof continued to carry on the business of the corporation and represented that it was an existing corporation; that relying upon such representation and having no knowledge to the contrary, the intervener, on June 1, 1905, agreed to a further extension of the time of payment and accepted certain renewal notes; that no part of the original indebtedness had been paid at the last extension and surrender of the last $10,000 note.

The plaintiff in answer denied the allegations of intervener's petition—denied J. D. Small's authority to execute the note to the intervener. The receiver also answered to the same effect.

The case was tried in the district court to a jury, a verdict and judgment for intervener were rendered and entered, and a motion for new trial was overruled. The receiver appeals.

The first assignment of error, which is repeated and presented in various forms, is that the intervener obtained from the court an order to all the opposing parties and their attorneys, after having made demand therefor, for the inspection and copy, or permission to make a copy, of each book, paper, etc., in their possession or under their control relating to the indebtedness in question. There was no affidavit showing that there was any particular paper or book in the possession of the appellees or in existence. There is no authority to make such an order without such showing. (*Railway Co. v. Burks,* 78 Kan. 515, 96 Pac. 950.) The order is reviewable on appeal, and the only question is whether it was prejudicial.

It seems that practically the only evidence sought to be obtained through the order was a copy of a letter

written by the intervener to E. D. Small, one of the defendants. The intervener, however, did not rely upon the order or his affidavit of the contents of the letter; he took the deposition of E. D. Small in California, who therein admitted that he received the letter, and testified that the letter was lost or destroyed. The intervener on the trial testified that he wrote the letter and produced in evidence a paper which he testified from recollection was a copy thereof. That he was also permitted to introduce an affidavit to which the same copy of the letter was attached was unauthorized by the notices he had given or the order made by the court, as we have seen, but it did not add to or detract from his oral testimony upon which he was subject to cross-examination. The letter being lost or destroyed, he, as the writer thereof, was competent to give his recollection of the contents. It was the best evidence available under the circumstances. Had they seen fit to do so, the appellant could also have produced the recollection of the recipient, E. D. Small, as to the contents of the letter.

We have considered also the numerous other technical objections to the evidence and manner of producing the evidence of appellee, but find nothing substantial therein.

There is a substantial question of fact as to whether the original loan of $10,000 made by the intervener was made to The Atchison Live Stock Company or to the firm of Small Brothers. It is, however, only a question of fact of which the evidence is conflicting and the verdict and judgment in favor of the intervener find ample support therein.

On April 10, 1901, E. D. Small wrote a letter to the intervener in which he gave a glowing account of the business of The Atchison Live Stock Company, which he says he and his brothers organized. The letter fairly indicates that the brothers were the sole owners of the corporation. In this letter E. D. Small also says

that they were feeding about six thousand cattle and a few hogs every year, and shows how the business of running the two corn mills, at about the capacity of three hundred barrels each per day, operated in connection with the cattle feeding, and how certain products of the mill were fed to the cattle and the loss which other grinding mills suffered, by selling their offal at a low price, was so obviated. In fact, this letter would indicate that both the mill business and the cattle business were jointly operated by The Atchison Live Stock Company. Just a month later E. D. Small again wrote the intervener, saying, among other things:

"Our sales at Atchison average $3000.00 per day, all cash. The demand is more than our plant will produce and we have decided to increase its capacity one-third. Will require about ten thousand dollars to do what we think of, and will be a chance for you to make a gilt-edged personal loan of that amount if you desire. You could send me $7000.00 and your check on your account here for $3000 (E. D. Small had been loaning money for the intervener in the bank at North Topeka, and indicated that there was about $3000 to his credit therein) for which I would send you Small Brothers' note, running two years at 6 per cent (interest payable quarterly)."

He goes on then to tell of the increased financial ability of Small Brothers. E. D. Small was then the president of the American Bank and wrote the letter on the stationery of that bank at North Topeka, Kan.

The intervener testified as to his answer to this letter as follows:

"I said, 'Yours of May 10th at hand, requesting a loan of ten thousand dollars for the Atchison Live Stock Company. I have concluded I will let the company have the money, but will also require the signature of the three Smalls, yourself and two brothers, to the note, with the company; you may turn over the $3000.00 of my credit in your bank and apply it and I will send you the balance.' I had a balance of a little over $3000.00 at the time in his bank."

As before said, he also offered in evidence his affidavit as to the contents of this letter, which varies somewhat from his oral testimony, but also indicates that he was proposing to loan the money to The Atchison Live Stock Company. In a letter which intervener wrote to E. D. Small in June, he acknowledged the receipt of the note for $10,000, and said, "I notice the Atchison Live Stock Company signs on the back instead of on the face of the note, which is not as understood."

There is evidence that a renewal note was executed for the indebtedness of $10,000, which was dated June 1, 1903, and was signed on the face thereof by the three Smalls and by The Atchison Live Stock Company, by J. D. Small, manager. This note and those following were given after the expiration of the charter of The Atchison Live Stock Company, but it is in evidence that the intervener did not know of the expiration of the charter. It appears, also, that this note was canceled soon after it was given and four other notes, signed in the same way, for $2500 each, were given in lieu thereof, and the interest was paid on all these notes until September 1, 1906.

There is also evidence that before the expiration of the charter of The Atchison Live Stock Company an amendment thereto was filed which authorized any of the officers of the corporation to sign the name of the corporation to any business instrument, and that the Small brothers held all the offices of the corporation.

J. D. Small, in a deposition, testified that the corporate stock of The Atchison Live Stock Company was all owned by himself, E. D. Small and J. D. Small, except three shares of $100 each.

There was some other evidence tending to show that the loan was made to Small Brothers, and also some evidence to show that it was made to The Atchison Live Stock Company, which is the determining fact of the case, but, as before said, we think the judgment in favor of the intervener is sustained by the evidence.

We have examined the numerous trial errors assigned but find nothing to justify a new trial of the case.

The judgment is affirmed.