T. J. GRAVES *et ux.*, Appellees, v. MERCHANTS & BANKERS' INSURANCE COMPANY, Appellant.

1.   **Joinder of Actions:** JOINT CONTRACT : PARTIES.   Where a policy of insurance against loss by fire was issued to a husband and wife jointly for a specified amount upon a building that was the separate property of the wife, and for not exceeding an amount named upon a stock of merchandise that was the separate property of the husband, in consideration of a single sum paid as premium, *held,* that upon the destruction of both properties the husband and wife were entitled to join as plaintiffs in an action upon the policy to recover for their respective losses.

2.   **Fire Insurance:** PROOFS OF LOSS: WAIVER : AGENCY.   Immediately after the loss in controversy the defendant was notified thereof, and within thirty days from the date of the loss the defendant sent its adjuster to investigate the same.   At that time the adjuster took a sworn statement from the insured as to how the fire originated, and of the amount of goods destroyed and the value thereof, and declared his satisfaction with the proofs so made. *Held,* that the power to investigate the loss included the power to take proof of loss, and, although the proof made might not be as complete as that called for by the policy, the agent might waive further proofs.

3.   **Evidence:** VALUE OF MERCHANDISE.   Merchants who were engaged in different lines of trade, but who had seen the stock of merchandise in question before it was destroyed by fire, *held,* to be competent to testify as to the value of such stock, though their testimony was of an unsatisfactory character.

4.   ———— : LEADING QUESTIONS.   The insured have testified generally as to the goods on hand at the time of the fire, *held,* that it was not improper to allow leading questions to be asked him for the purpose of directing his attention to particular items in stock.

5.   ———— : LETTERS FORMING PART OF SAME CORRESPONDENCE.   The defendant having introduced in evidence its letters to the plaintiffs in relation to the loss in controversy, *held,* that the plaintiffs were entitled to put in evidence letters written by them to the defendant forming a part of the same correspondence, though they contained declarations prejudicial to the defendant.

*Appeal from Decatur District Court.*—HON. J. W. HARVEY, Judge.

MONDAY, MAY 25, 1891.

THE plaintiffs alleged the issuance to them by the defendant of the policy of insurance set out, against loss by fire of the building described and a stock of merchandise while therein ; that the property was totally destroyed by fire, January 2, 1888 ; that on February 2, 1888, the defendant, by its adjuster, Overton, fully adjusted the loss, " took sworn statements of the plaintiff in regard to said loss and its cause, and then :and there, for and in behalf of the defendant, expressly waived all different or further proofs of loss on the part ·of · your petitioners, and then and there declared the ·satisfaction of defendant with the facts and proofs so made ; " that the property was worth the amount for which it was insured, and that the amount is due and unpaid.    The defendant, answering, admits the execu- ·tion of the policy, and denies that it, by itself or agents, waived the right under the policy and laws of Iowa to ·demand full and complete proofs of loss ; denies that the property was of the value alleged, and that the property was totally destroyed.    The defendant admits issuing the policy, and denies that any notice or proofs of loss were ever given or made ; that the right to ·demand proofs of loss was waived ; and that the prop- erty was totally destroyed, or of the value alleged. The defendant alleges that the plaintiffs represented in ·their application that an inventory of the goods had been taken in June, 1887, showing their value to be twenty-one hundred dollars, and that it relied thereon in granting the policy ; that in fact, as the plaintiffs knew, no inventory had been made at that time, nor for a long time prior, and that by the last inventory the goods were shown to be of much less value than twenty- ·one hundred dollars.    It also alleges that the real estate upon which the building was situated and the building were the sole and separate property of M. E. Graves, ·and that the goods were the sole and separate property of F. J. Graves, neither having any ownership in the property of the other, and, therefore, there is a mis- joinder of parties plaintiff, and that the plaintiffs are

not entitled to maintain this action. It also alleges that the plaintiffs are estopped, by the terms of the policy, from claiming the waiver alleged. A verdict was returned in favor of the plaintiffs for fifteen hundred and twenty dollars, and, the defendant's motions in arrest of judgment and for a new trial being overruled, judgment was entered upon the verdict. The defendant appeals.—*Affirmed.*

*A. J. Baker* and *A. A. Haskins*, for appellant.

*E. W. Curry* and *Parish & Hoffman*, for appellees.

GIVEN, J.—I. We first inquire whether there is a misjoinder of parties plaintiff. It appears without question that the plaintiffs did own the property insured separately, as alleged, neither having any interest in the property of the other, except as it arose from their relation as husband and wife, and the husband's occupancy of his wife's store building. The policy is to them jointly, is for a specified amount on the building, and not exceeding a specified amount on the goods, and was issued in consideration of the single sum paid as premium.

1. JOINDER of actions: joint contract: parties

Appellant claims the rule to be "that, if the interest be joint, the action must be joint, although the words are several; and, if the interest be several, the covenant will be several, although the terms of it be joint." Authorities are cited sustaining this rule, and it is contended that, as the plaintiffs' interests were several, they cannot maintain a joint action, though the covenant in the policy is by its terms to them jointly. Whether such is the rule at common law we need not inquire, as the question must be determined upon the provisions of our statute, which is as follows: "Sec. 2545. All persons having an interest in the subject of the action, and in obtaining the relief demanded, may be joined as plaintiffs, except where it is otherwise provided in this Code." In *Skiff v. Cross*, 21 Iowa, 459, it was held that under this section sureties who had paid

money for their principal in equal amounts may join in an action to recover the whole amount. It is there said : "What good reason can be given why we should hold that each must bring a separate action, and thus vex the defendant with several suits instead of one? Under the section quoted the plaintiffs may join, or they might, as heretofore, have brought their separate action, each for the amount he paid." That these plaintiffs may be entitled to different amounts is no reason why they should be driven to separate actions upon the covenants that are to them jointly. *Fauble v. Davis*, 48 Iowa, 462. Cases cited by the appellant are clearly distinguishable from this. *Rhoads v. Booth*, 14 Iowa, 575, was a joint action by several plaintiffs for malicious prosecution, and it was held that the damages were personal to each, and that they could not join. *Cogswell v. Murphy*, 46 Iowa, 44, was against several separate owners of stock to recover damages done by all of the stock, and it was held that a joint action did not lie against the owners. *Bort v. Yaw*, 46 Iowa, 323, was to recover damages for fraudulent representations made to the plaintiffs, whereby each was induced to enter into separate and independent contracts with the defendant. *Mendenhall v. Wilson*, 54 Iowa, 589, was an action for trespass against two defendants and on contract against one, with a verdict against both for the trespass. There was no evidence against one defendant, and it was held error to refuse an instruction to discharge that defendant as improperly joined in the action. *Independent School Dist., etc., of Graham Twp. v. School Dist.*, 50 Iowa, 322, was by several plaintiffs on an implied contract, which, if it did arise, was to each plaintiff separately. It is said in that case that it is not the rule in this state to allow a joinder of plaintiffs where the same result must follow. Clearly, that the same result will follow is not, of itself, ground for a joint action. They must have an interest in the subject of the action, and in obtaining the relief demanded. It will be noticed that in none of these cases was the cause of action based upon a covenant

running jointly to the plaintiff and for a single consideration. It may be questioned whether the defendant, having contracted with the plaintiffs jointly, is not estopped from denying the joint obligation; but this we do not determine. *Thompson v. City of Keokuk*, 61 Iowa, 187. As bearing somewhat upon this question, see, also, *Linder v. Lake*, 6 Iowa, 164; *McNamee v. Carpenter*, 56 Iowa, 276; *Kensel v. Ins. Co.*, 16 N. W. Rep. (Minn.) 430. Section 2548 of the Code provides that "persons having a united interest must be joined on the same side, either as plaintiffs or defendants, except as otherwise provided by law." By this policy, and for all the purposes of the insurance, the interests of these plaintiffs in the insured property was united. If this was an action against the plaintiffs on this contract of insurance they would not be heard to plead a misjoinder, in the face of section 2550, as to joinder of defendants; they, as well as this defendant, being jointly bound by the contract. We are of the opinion that there is no misjoinder of parties plaintiff.

II. A number of the errors assigned arise out of the following facts with respect to notice and proof of loss, and the alleged waiver of other proofs of loss than the statement made to Mr. Overton: It is provided in the policy that "in case of loss the assured shall forthwith give written notice thereof to the company * * * within sixty days; render an account of the loss, signed and sworn to; state how the fire originated; give copies of the written portions of all contracts thereon; also actual cash value and ownership of the property, and the occupation of the premises." The loss occurred January 2, 1888, and on February 2, following, F. C. Overton was sent by the defendant to the place of the loss, to investigate with respect thereto. There is dispute as to what he was authorized to do, but it is unquestioned that he did then and there take a written statement under oath from the plaintiff, T. J. Graves. That statement shows that Graves was sworn to "true answers make to all questions propounded to him by

*2. FIRE INSURANCE: proofs of loss: waiver: agency.*

T. C. Overton, adjuster of the Merchants & Bankers' Insurance Company of Des Moines, Iowa, touching my loss and claim on account of loss by fire," etc. The statement was taken in narrative form in response to questions asked by Overton, and it is with reference to how the fire originated, and contains statements as to an inventory of goods, the amount thereof, the amount and bills of subsequent purchases, and the current expenses of the assured, thereby tending to show the value of the goods. There was testimony tending to sustain the plaintiffs' allegation that Mr. Overton waived all different or further proofs of loss, and declared the satisfaction of the defendant with the facts and proofs so made. In subsequent letters from the defendant's secretary, Mr. Overton is spoken of as "our adjuster," and the plaintiffs are called upon to furnish original invoices and bills of lading from date of last inventory. There was also testimony tending to show that the plaintiffs immediately notified the defendant's agent who had solicited the risk of the fire, and that he notified the company.

The written statement made to Mr. Overton is in substantial compliance with all that the policy requires as proofs of loss, except that no copies of written portions of contracts are mentioned, nor the occupation of the premises stated. There was no question as to the occupation, and we may infer from the absence of any mention of contracts that there were none. It is said there was no mortgage or other lien upon any of said property. If this statement was not a sufficient rendering of an account of the loss, it was evidently so complete that Mr. Overton might more readily accept it as sufficient proof of loss than one which was less so. It was not a question as to whether Mr. Overton had authority to and did waive the making of any proofs of loss, but rather whether he waived further proofs,—whether he accepted this statement as sufficient. That there was testimony tending to show that he did so accept it, is not disputed. As to Mr. Overton's powers the defendant's secretary testifies that he was sent to investigate

the circumstances of the fire, and that he was after-
wards appointed to adjust the loss. Taking proofs of
loss, as acquired by the policy, would seem to be a very
ready and proper way of investigating "the circum-
stances of the fire." The statement taken by Overton
was sent to and acted upon by the defendant, as shown
by letters calling for further proofs, from which to deter-
mine the value of the goods lost. We think from all the
evidence the jury might find that Mr. Overton had the
power to take proofs of loss; that he did waive any
further proofs than the statement taken, and did
express himself as satisfied therewith. It follows that
the errors assigned, upon the theory that there were no
proofs of loss, and that Overton did not have authority
to waive proofs of loss, are not well founded. There is
a marked difference between authority to and waiving
of any proofs of loss by an agent, and authority to and
waiving any further proofs than those taken by him.
The cases cited are all of the first class, and, therefore,
not applicable to this. As stated, there was testimony
tending to show that the defendant had notice of the
fire soon after, through its soliciting agent; but, whether
it did or not, it is evident that it had notice upon which
it acted. Having acted upon the notice it had, it must
be taken, in the absence of objection, to have waived
any other or different notice.

III. One Crawford was called by the plaintiffs to
testify as to the value of the goods. He stated that he
had two and a half years' experience in the
hardware business; was then keeping a
drugstore near the plaintiffs' place of
business, and practicing medicine; that he was fre-
quently in the plaintiffs' store; that it seemed to be
well filled; did not notice any depletion of stock before
the fire; and that in his judgment there was from fifteen
hundred to sixteen hundred dollars' worth of goods.
Mr. Early, a grocer in the same town, but who had
taken no particular notice of Graves' groceries, gave as
his judgment that they were worth from two hundred
to three hundred dollars. The appellant's objections

3. EVIDENCE:
value of mer-
chandise.

to this testimony were overruled, of which it complains. It is not as satisfactory as would be desired in arriving at the value of the goods destroyed, and yet it cannot be said that it is so remote as to not bear upon that question. In this, as in many cases of the kind, there are no books and invoices from which to ascertain the value; and of necessity the testimony, which is less convincing, must be received and considered. We think there was no error in receiving this testimony, and leaving its weight to be determined by the jury.

IV. Upon examination of the plaintiff, T. J. Graves, and after he had stated generally concerning the goods on hand, he was asked a great many questions in chief, such as, "Did you have any augers?" all of which were objected to as leading. They were leading in form, and yet the circumstances were such as to justify questions thus directing the attention of the witness to each particular item.

4. ——: leading questions.

V. Objection was made to letters written and sent by the plaintiffs to defendant, on the grounds that they contained statements in favor of the plaintiffs, and that they were not entitled to have their own declarations admitted in their favor. These letters were a part of the correspondence with the defendant, and form simply one side of the conversation by letters; and, defendant's letters being admitted, they were admissible as part of the correspondence. One of plaintiff's letters referred to Mr. Overton as "your adjuster." The appellant contends that they were not entitled to this statement as evidence that he was the defendant's adjuster. Certainly not, unless the defendant in reply admitted it, or was silent on that subject. Without discussing them further, we will say that we are very clear that the letters were properly admitted.

5. ——: letters forming part of same correspondence.

On his examination Mr. Overton was asked whether he was engaged in any capacity by the defendant "other than to simply take the answers of Mr. Graves, and to report the facts in reference to the fire." The

plaintiffs objected, on the grounds that the defendant sent him there as an adjuster, and he held himself out to the plaintiffs as such, and cannot now claim that he was not. The objection was sustained, and the appellant complains. That he did hold himself out to the plaintiffs as an adjuster is shown in the statement he' took, and in a letter of February 8 following the defend-: ant speaks of him as " our adjuster." The question, however, was not whether he was an adjuster, but whether he had authority to take proofs of loss, and. waive any further than those taken, or " to simply take: the answers of Mr. Graves, and to report the, facts in' reference to the fire." There was no prejudice in sus-; taining this objection, as Mr. Kirkham, the secretary,: testified afterwards that Overton " was instructed to: make investigation as to the circumstances of the fire, and he was instructed positively not to take any proofs of loss." He also explained the letter of the eighth by saying that Overton was then authorized to adjust this, loss. If Overton was instructed not to take any proofs· of loss we have seen that he exceeded his instructions by taking them, and that the defendant received and acted upon them from him as " our adjuster," as shown by the correspondence.

This discussion disposes of all the errors assigned and argued, and leads us to the conclusion that the judgment of the district court should be AFFIRMED.