SAMUEL W. HAYES, CHIEF JUSTICE.
MATTHEW J. KANE, VICE CHIEF JUSTICE.
R. L. WILLIAMS,
JOHN B. TURNER,        }JUSTICES.
R. H. LOOFBOURROW,

## COMMERCIAL UNION ASSUR. CO., LIMITED, OF LONDON, ENG., v. WOLFE.

No. 3226.   Opinion Filed January 13, 1914.

(137 Pac. 704.)

1. **APPEAL AND ERROR**—Review—Findings of Fact.   The questions at issue in the action, being (1) whether or not a proper demand had been made for the production of the books and inventory provided for by the iron-safe and inventory clause in the standard form of fire insurance policy, and (2) whether or not the insured's failure to produce his books and inventory was due to his fault or negligence, are questions of fact to be submitted to the jury, under proper instructions, as to the law governing, and the finding of the jury thereon, being supported by sufficient evidence, will not be disturbed.

2. **EVIDENCE**—Best and Secondary.   The best evidence the nature of the case will permit of shall always be required, if possible to be had; but, if not possible, then the best evidence that can be had shall be allowed.

3.    **SAME.** Where the last inventory and books of the assured have been lost or stolen through no fault of his, it is not error to admit oral proof to establish the value of the property destroyed by the fire.

(Syllabus by Galbraith, C.)

*Error from Superior Court, Pottawatomie County;*
*Geo. C. Abernathy, Judge.*

Action by C. Dale Wolfe, trustee of the estate of D. A. Trotter & Co., against the Commercial Union Assurance Company, Limited, of London, England. Judgment for plaintiff, and defendant brings error. Affirmed.

*Burwell, Crockett & Johnson* and *Scothorn, Caldwell & McRill,* for plaintiff in error.

*Lydick & Eggerman,* for defendant in error.

Opinion by GALBRAITH, C.   D. A. Trotter & Co., a partnership, were the insured. After the loss upon the policy in suit, the insured were adjudged bankrupts, and the plaintiff, C. Dale Wolfe, was elected and qualified as trustee, and, as such, prosecuted the action on the policy, and recovered a judgment, from which the defendant appealed.

The first and second assignments of error are argued together, and these are that the verdict of the jury is contrary to the law and the evidence. It is contended that the insured breached the "iron-safe clause" of the policy, wherein he agreed to keep his books and "last inventory" securely locked in an iron safe at night, and when the store building was not open for business, and also failed to produce the inventory and these books for the inspection of the company after the fire, and for that reason the policy was void and no recovery could be had thereon. The iron-safe and inventory clause in this policy was the same as those in the ordinary standard form, and are recognized as reasonable and binding provisions of an insurance contract. *German American Ins. Co. v. Fuller,* 26 Okla. 722, 110 Pac. 763.

The plaintiff, in his petition, specially pleaded a waiver by the defendant of these clauses in the policy, setting out that on the 27th day of September, 1909, which was nine days after the fire,

one E. W. Roberts, the agent of the company, duly authorized, visited the scene of the fire and investigated the same, and informed the insured that the company denied liability, and would not pay him anything on the policy, and that thereby the company waived the furnishing of proof of loss and the production of the books and inventory, as provided in the policy. The petition was duly verified, and the defendant's answer denying the same was not made under oath. However, the evidence introduced at the trial showed that the insured made a complete inventory of his stock of merchandise on or about the day the policy in suit was written, May 26, 1909, and kept a complete set of books from that day forward until the fire. That these consisted of a daybook, in which was entered the daily sales, both for cash and credit, and a ledger in which was entered bills receivable, and another ledger in which was entered the bills payable and the merchandise accounts. That he had no iron safe in his store building, which was located in a small country village, away from the railroad, in Seminole county, but that he kept the inventory and books at night, when the store was not open for business, at his residence, which was separate and apart from the store building, and that the inventory and these books were intact and ready to be produced for the inspection of the company after the fire, and that no demand was made upon him to produce them on the first visit of the agent of the company, nine days after the fire. That some 30 days later he moved his residence from the place where the store burned to another location in Seminole county, and, in the confusion resulting from the change of location, the ledger containing the bills payable and merchandise accounts, and the blotter containing the cash sales, were either lost or stolen, and that he had made diligent search for them a number of times since moving and was unable to find them, although he had one ledger and a copy of the cash sales account, and produced them for the inspection of the agent of the company on his visit to the scene of the fire more than 60 days after the loss.

The record shows that the jury were properly instructed as to the law governing these questions, and were told that the

provisions of the policy providing for keeping a complete set of books and for taking an inventory of the stock insured, and for keeping these books in an iron safe were valid and binding provisions, and that they imposed upon the insured the duty of showing a substantial compliance therewith, or a waiver on the part of the company, and that the law and these provisions did not require the insured to produce his books and inventory unless they were demanded by the company, and, further, that he was not required to produce them upon demand unless they were in existence, or unless they had been destroyed by his carelessness or negligence, so that the question whether or not a proper demand had been made for the production of the books and inventory by the agent of the company, the question of waiver by the agent, Roberts, and whether or not the insured's failure to produce all of his books was due to his fault or negligence, and whether or not he had substantially complied with these provisions were questions that were properly and fairly submitted to the jury by the trial court, and the finding of the jury thereon being supported by the evidence, as it clearly is, the finding should not be disturbed, and these exceptions should be overruled.

The remaining assignments complain of the rulings of the court in admitting oral testimony over the objection of the insurance company to prove the value of the stock of merchandise destroyed by the fire.  Plaintiff was permitted to prove by the insured that the value of the stock of goods at the time the policy was written was $2,650; that the amount of goods purchased between that time and the date of the fire was $600; that the amount of his cash sales between the date of the policy and the loss was about $600.  This witness was corroborated as to the value of the stock at the time of the fire by another witness, who was formerly in partnership with the insured, and owning a half interest in the business, and who sold out some four months before the policy was written, but was familiar with the stock and its value from that time up to the fire.  This, it seems, was the best evidence available for showing the amount of the loss in the absence of the books, which, it had been shown, could not be produced, because they had been lost or stolen, and through

no fault or negligence of the insured.   This character of testimony was competent.   Its weight was for the jury.   Secondary evidence is admissible in the absence of primary evidence, especially where the absence of primary evidence is satisfactorily accounted for.

"And the one general rule that runs through all the doctrine of trial is this, that the best evidence the nature of the case will admit of shall always be required, if possible to be had; but if not possible, then the best evidence that can be had shall be allowed."  (3 Blackstone, p. 368.)

"Where there are no books or inventories, or they have been destroyed, secondary evidence is admissible to show the value of the destroyed property."  (Cooley's Briefs, Law of Ins., p. 3123.)

"Merchants engaged in different lines of business, who saw a stock of insured goods before it was destroyed by fire, may testify as to the value of such stock, although their testimony is not as satisfactory as might be desired."  (*Graves v. Merchants & Bankers' Mfg. Co.*, 82 Iowa, 637, 49 N. W. 65, 31 Am. St. Rep. 507.)

The effect of this testimony was to show that the loss sustained exceeded $2,000, the amount of the policy being $1,500, and it was sufficient to sustain the verdict of the jury for the full amount of the policy.

The record shows that the trial court gave every instruction to the jury which the insurance company requested, and that every possible phase of their contention in this suit was fairly presented to the jury in instructions prepared by them, and, there being ample evidence in the record to sustain the verdict of the jury, we see no reason why the judgment appealed from should not be affirmed.

By the Court:   It is so ordered.