**FARMERS' NAT. BANK v. HARTOON et al.**

No. 7381.—Opinion Filed July 11, 1916.

Rehearing Denied September 12, 1916.

(159 Pac. 844.)

**1. Evidence—Best Evidence Rule.**

The best evidence the nature of the case will admit of shall always be required, if possible to be had; but when the best evidence is not available and its absence properly accounted for, secondary evidence is admissible.

**2. Same—Documentary Evidence.**

Where a written contract is material to support the issues in a cause, the writing itself is the best evidence, and where this is not produced and its absence is not properly accounted for, i. e., it is not shown to be lost or not available to the party whose duty it is to produce it, held, that it was prejudicial error to admit, over the objection, parol testimony as to the terms of such written contract.

(Syllabus by Galbraith, C.)

Error from District Court, Pottawatomie County; Chas. B. Wilson, Jr., Judge.

Action by the Farmers' National Bank against Mattie Hartoon and others. There was judgment for defendants, and plaintiff brings error. Reversed.

G. A. Outcelt, for plaintiff in error.

T. G. Cutlip, for defendants in error.

Opinion by GALBRAITH, C. The Farmers' National Bank, as plaintiff, commenced this action in the trial court to recover the amount of three promissory notes for $185.60 each, bearing 10 per cent. interest from June 1, 1912, executed by Mattie Hartoon, C. B. Hartoon, E. J. Dickerson, and W. J. Carson, payable to the order of F. M. Redding. The plaintiff alleged in its petition that it was the owner and holder of said notes in due

course; that they were past due, and no part thereof had been paid It is further alleged that a real estate mortgage had been executed by C. B. and Mattie Hartoon to secure the payment of said notes, and a breach of the conditions thereof is charged. The prayer was for judgment for the amount of the debt and foreclosure and sale of the mortgaged premises.

The answer of the defendants admitted the execution of the notes, but alleged that they had been executed and delivered upon a condition, as evidenced by a written contract made at the time of the execution of the notes, and that the condition agreed upon had been performed, and there was no consideration for the notes. It also alleged that the bank was not a holder of the notes in due course, but that they still belonged to the payee, Redding. A reply to the new matter in the answer was filed denying the same. Upon the issues thus formed the cause was tried to the court and a jury, and a verdict returned for the defendants, upon which judgment was rendered, and from which an appeal has been prosecuted to this court.

It is assigned as error that the court erred in admitting parol evidence to establish the written contract, setting out the alleged conditions upon which the notes in suit had been executed, over the objection of the plaintiff in error, and without proper foundation having been laid for the admission of secondary evidence. One of the material issues in the cause was whether or not the bank was the owner and holder of said notes in due course, and whether the notes had been executed upon a condition, and, if so, whether or not the bank had notice of such condition. It was alleged in the answer that the notes were executed upon a condition, and that this condition was evidenced by a written contract between the makers of the note and the payee therein named, Mr. Redding. This writing was not offered or introduce in evidence, but secondary evidence of its contents was admitted over the objection of the plaintiff in error. The record on this point is as follows:

Mr. Dickerson while on the stand testified, in part, as follows:

"Q. I will ask you to state whether or not you had a written agreement with Mr. Redding as to the terms of the execution of these notes. A. Yes, sir; there was some written contract or agreement. Q. That contract was in writing was it, Mr. Dickerson? A. Yes, sir; it was in writing. * * * Q. Mr. Dickerson, you haven't the contract in your possession at this time? A. No, sir; I have not. Q. I ask you whether or not you saw the

contract while it was in the possession of Mr. Caldwell. A. Yes, sir. Q. Do you know what he done with it? A. He handed it to you. Q. To Mr. Cutlip? A. Yes, sir. Q. Do you know what Mr. Cutlip did with it then? A. No; I don't; I didn't see it again."

Mr. C. B. Hartoon was recalled, and testified as follows:

"Q. Mr. Hartoon, do you know this contract? A. I know it when I see it. Q. Do you have it now? A. No, sir. Q. Did you have it when you were on the witness stand? A. Yes, sir. Q. To whom, if any one, did you give it to? A. I handed it to you and I think you handed it to the court. Q. Have you got it now? A. No, sir. Q. When it was handed to the court what became of it? A. That was the last I saw of it. Q. Who had it? A. I think he put it on his desk; It was laying right there the last I saw of it; right there.

"The Court: Proceed with the trial.

"Mr. Cutlip: Are you satisfied as to its loss, Mr. Outcelt?

"Mr. Outcelt: No; I am not satisfied."

Mr. Dickerson was then recalled, and testified as follows:

"Q. Have you? You say, I believe, you had a written contract with reference to the matter now in controversy; did you or did you not? A. Yes, sir; I had it. Q. That is the same written contract which probably has been lost and we have been inquiring about? A. Yes, sir. Q. Do you remember the date of that contract? A. It was dated at or near the time or the same date of the date of the notes. Q. Do you remember by whom it was prepared? A. No, sir. Q. I will ask you to state whether or not you signed the contract? A. Yes, sir; I signed it. Q. Who else was it signed by, if any one? A. F. M. Redding. Q. F. M. Redding? Now do you remember the terms of the contract? A. Yes, sir. Q. You may state the terms of the contract.

"Mr. Outcelt: Objected to as incompetent, irrelevant, and immaterial, and not the best evidence, unless it is shown that the Farmers' Bank knew of the contract and its contents.

"The Court: Objection overruled."

The witness was then permitted to testify, over objection, as to the contents of this written contract. Motion was then made by the attorney for the plaintiff in error to strike out the testimony, which was in turn overruled.

In Landon v. Morehead, 34 Okla. 701, 713. 126 Pac. 1027, 1032, it is said:

"A fundamental in the rule of evidence is that which requires the production of the best evidence of which the case, in its nature, is susceptible. This rule naturally leads to the division of evidence into primary and secondary. Primary is that which we have just mentioned as the best evidence; that kind of proof which, under any possible circumstance, affords the greatest certainty of the fact in question. All evidence falling short of this in its degree is termed secondary. Such is the substitution of oral for written evidence. This class is divided by Greenleaf, in his work on Evidence (15th Ed.) § 85, into three classes, as follows: 'The cases which most frequently call for the application of the rule now under consideration are those which relate to the substitution of oral for written evidence; and they may be arranged into three classes, including in the first class those instruments which the law requires should be in writing; in the second, those contracts which the parties have put in writing; and in the third, all other writings the existence of which is disputed, and which are material to the issue.'

"The written option falls within the latter, if not also within the two former, of the classes named. In order to render competent secondary evidence of a lost instrument, it must be first given in evidence that such a paper once existed, though slight evidence may be sufficient for this purpose, and that a bona fide and diligent search has been unsuccessfully made for it in the place it was most likely to be found, (if the nature of the case demands such proof)"—citing Barnes v. Lynch et al., 9 Okla. 156, 59 Pac. 995, and various authorities.

Proceeding, the court says:

"It is expected that the party offering such evidence should be able to show that he has, in good faith, exhausted, in a reasonable degree, all the sources of information and means of discovery which the nature of the case would naturally suggest, and which were accessible to him."

In Commercial Union Assur. Co. v. Wolfe, 41 Okla. 342, 346, 137 Pac. 704, 705, it is said:

"Secondary evidence is admissible in the absence of primary evidence, especially where the absence of primary evidence is satisfactorily accounted for. 'And the one general rule that runs through all the doctrine of trial is this, that the best evidence the nature of the case will admit of shall always be required, if possible to be had; but, if not possible, then the best evidence that can be had shall be allowed. 3 Blackstone, p. 368."

In M., O. & G. R. Co. v. West, 50 Okla. 521 151 Pac. 212, the rule is announced in the first paragraph of the syllabus as follows:

"The general rule admitting secondary evidence is that there must be a showing that the primary evidence is lost, or destroyed, or otherwise unavailable, through no fault of the party making the offer. It is not error to exclude the copy of a written contract where it appears that the party making the offer has the custody or control

of the original and the original is not available through the carelessness or negligence of such party."

Here it appears that the primary evidence, the written contract, was in the possession of the defendants, or had been during a part of the progress of the trial, and that one of the defendants had the writing in his possession while he was giving his testimony in the cause, and that he passed the paper to his attorney. Just what became of the writing does not appear, nor is it made to appear that it had been lost. It seems to have been passed to the court.

There was a failure to show that all sources of information and means of discovering the writing available to the defendants had been exhausted. If the court had the writing, it was not lost. Nor was it lost if the defendant's attorney had it. The attorney was not sworn and did not testify that the writing was lost, and that he was unable to produce it for that reason. He was content with offering two of the defendants who testified that they did not have the writing and did not know where it was. The showing was clearly insufficient to justify the admission of secondary evidence for the reason that it failed to show that the primary evidence was not available. The terms of this written contract were of prime importance under the issues formed by the pleadings. In the absence of a proper showing to justify it, the admission of secondary evidence of the written contract was highly prejudicial.

Other errors are assigned, but, in view of the conclusion announced on the above assignment, it does not seem necessary to consider them.

The judgment appealed from should be reversed, and the cause remanded, with directions to grant a new trial.

By the Court: It is so ordered.