**McCOY et al. v. WOSIKA et al.**

No. 8676.—Opinion Filed Feb. 25, 1919.

Rehearing Denied May 27, 1919.

(Syllabus by the Court.)

1. **Evidence—Secondary Evidence — Predicate.**

In order to introduce parol evidence of the contents of a written contract, it is necessary for the party offering such evidence to show that the original contract was lost or destroyed or beyond his control, which is a condition precedent to the admission of the secondary

evidence, and where this is not done it is not error for the trial court to exclude such secondary evidence.

**2. Appeal and Error—Landlord and Tenant —Eviction — Growing Crops — Instructions—Damages.**

Where one has been wrongfully evicted from the possession of the premises on which he had at the time growing crops, and the wrongdoer finished the cultivation of said crops to the maturity thereof, severed the same from the soil, and converted them to his own use, the party so evicted may recover damages against such wrongdoer, and where the plaintiff was entitled, under the evidence, to recover a sum equal to that awarded under any theory of the law, the judgment in his favor will not be reversed for an alleged error in defining the measure of damages in the court's instructions to the jury.

**3. Appeal and Error—Verdict and Finding— Evidence—Review.**

In a civil action, triable to the jury, where there is competent evidence reasonably tending to support the verdict of the jury, and no prejudicial errors of law are shown in the instructions of the court, or its ruling on law questions presented during the trial, the verdict and finding of the jury will not be disturbed on appeal.

Error from District Court, Canadian County; John W. Hayson, Judge.

Action by Ed. Wosika and another against Chas. McCoy and another. Verdict and judgment for plaintiffs, motion for new trial denied, and defendants bring error. Affirmed.

Fogg & Bennett, for plaintiffs in error.

C. F. Dyer, for defendants in error.

JOHNSON, J. This is an appeal from the district court of Canadian county.

Ed. Wosika and Will Wosika, plaintiffs below, filed their action on the 28th day of September, 1914, against Chas. McCoy and S. B. Dunafon, as defendants, to recover the sum of $700 damages for conversion of 18 acres of corn and a quantity of hay grown upon the N. W. ¼ of section 29, township 13, range 10 W., I. M., during the season of 1914. The parties will be designated plaintiffs and defendants, respectively, as they appeared in the trial court.

Plaintiffs alleged that, while they were in possession of the same under and by virtue of a written contract or lease, made on the 1st day of March, 1914, by Ed. Wosika, one of the plaintiffs, and John McCoy, the owner of an undivided two-thirds interest in said land, by virtue of which lease, in consideration of $100 paid by said Ed. Wosika, the said plaintiff was to have all the crops which

might be raised on the said interest of the said John McCoy upon the land already broken, and also to have all hay that was raised on, said share of land, and the plaintiffs having so entered into possession of said land under said lease, and commenced to cultivate about eighteen acres of corn, at that time the defendants below, Chas. McCoy and S. B. Donafon, with force and violence entered upon the cultivated land described as aforesaid, ejected them from the same, and by threats and intimidations kept plaintiffs from entering said lands and completing the cultivation of said crop, a copy of which lease plaintiffs attach to their petition, making same a part thereof, and having the same marked Exhibit A. And after the trial court had overruled the motion of the defendants below to require the plaintiffs to make their petition more definite and certain, and also to strike certain parts of plaintiffs' petition and a general demurrer to the plaintiff's petition, the defendants, on February 12, 1916, filed their answer to the petition of plaintiffs, consisting of a general denial and a counterclaim of $120, alleged to be amount due the defendant Chas. McCoy for rents from his interest in said quarter section of land for the year 1913, and upon the issues thus joined the cause proceeded to trial before the court and jury on the 24th day of March, 1916; and on the 25th day of March, 1916, the jury returned a verdict in favor of the plaintiffs in the sum of $700, the amount sued for, after which the defendants filed a timely motion for a new trial, which was by the trial court overruled, which ruling of the court was excepted to by the defendants, from which the defendants appealed to this court.

The testimony showed that the arrest of the plaintiffs was under a void process, that the same was issued by a justice of the peace in civil proceedings filed by the defendant S. B. Dunafon against plaintiffs, wherein a bill of particulars was filed, but that no affidavit charging the plaintiffs with committing any offense against the laws of the state was made or filed.

The facts that are undisputed in this case are: That at the time this controversy arose and for a number of years prior thereto the tract of land in controversy was owned by John McCoy and Charles McCoy, as joint owners and tenants in common, John McCoy owning two-thirds and Charles McCoy one-third thereof, and that John McCoy was a nonresident of the state; that there were no buildings on the premises, and that about 50 acres was plowed land, the balance in grass; that for the year 1913 the plain-

tiffs cultivated what was estimated to be two-thirds of the plowed land, leaving a strip of about one-third through the middle that was not cultivated; that they cultivated the same under a verbal contract made with one Wallace, who lived at El Reno, who had been acting as attorney for John McCoy; and that Ed. Wosika had a written contract with John McCoy for the use of his interest in said land for the year 1914, for which use Ed. Wosika paid $100 in cash.

The plaintiffs testified that, in pursuance of said written lease, they had planted from 18 to 25 acres of the cultivated land in corn during the spring of 1914, leaving a strip estimated to be one-third of the cultivated land through the middle thereof, upon which no plowing or cultivation had been done prior to the time this controversy arose; that at the time the controversy arose their corn was about 5 or 6 inches high, at which time the defendants appeared upon the premises and ordered them off, and that they refused to go, and that in a short time thereafter one of the defendants, Charles McCoy, came to where they lived with their father and family upon premises adjacent to the land in controversy, in company with a deputy sheriff, who arrested them, reading to them some kind of warrant, and compelling them to go with him, and defendant McCoy, going in a hack or spring wagon belonging to the latter, before a justice of the peace, one C. C. Thompson, of Calumet, which justice required them to execute an appearance bond, which they did, and that they were forbidden by Charles McCoy to go upon the premises any more, and at the time making serious threats of personal violence if they attempted to go on the premises again, and that on account of same they did not go upon the premises or cultivate or harvest their crops upon the same during the season of 1914.

The facts of the arrest of the plaintiffs and taking them before a justice of the peace were admitted.

The further testimony of the plaintiffs in regard to the crops, and the cultivation of the same, was disputed in part by the testimony of the defendants, but it was undisputed that the defendants cultivated the land for the balance of the year 1914, harvested the crops, and converted them to their own use. The testimony showed that the defendant Donafon was a tenant on the premises of his codefendant, Chas. McCoy. The testimony of the plaintiffs was, in substance, that the defendants, after the eviction of the plaintiffs, cultivated all the plowed lands on the premises, and had the use of all the grass

lands for the year 1914, and that similar lands adjacent to the land in controversy produced corn that year at from 25 to 35 bushels per acre, and that the market price of corn was from 55 to 65 cents per bushel, that the grass land would have yielded three-fourths of a ton to the acre, and that two-thirds of the same produced about 25 tons, and that the same was worth in the market from $6 to $8 per ton.

The defendants offered no testimony as to the amount of crops grown upon the premises or the market value of the same.

The errors complained of and relied on for reversal by the defendants may be summarized as follows: First, the court erred in rejecting testimony offered by the defendants and in admitting testimony offered by the plaintiffs, to which the defendants excepted; second, the court erred in its instructions to the jury.

The principal objection made by the defendants to the rejection of evidence offered by them is that the court erred in not permitting them to prove by parol the terms of a purported written lease. Under the well-established rule that the best evidence of which the nature of the case will admit shall always be required, where a written contract is material to support the issues in the case, the writing itself is the best evidence, and where this is not produced, and its absence is not properly accounted for, parol evidence is inadmissible to prove its contents. National Surety Co. v. Okla. Nat. Life Ins. Co., 74 Oklahoma, 165 Pac. 161; Farmers' Nat. Bank v. Hartoon et al., 60 Okla. 193, 159 Pac. 844.

The evidence of the defendant was not sufficient to show that the original lease was lost or destroyed or could not be produced by the exercise of reasonable diligence, and the court did not abuse its discretion in rejecting parol evidence of its contents.

The complaint as to the alleged error of the court in permitting plaintiffs to prove the extent of their damages by showing the probable yield and value of the crops by comparison with the yield of crops on similar land adjacent thereto is not well taken. The actual yield of the crops was within the exclusive knowledge of the defendants, and, since they did not see fit to offer any evidence as to what the yield was, we think it was proper for the plaintiffs to show it by the best evidence available under the circumstances, especially in view of the fact, as will hereinafter appear, that the plaintiffs recovered less than they were entitled to under any theory of the case.

Vigorous complaint is made of the instructions of the court concerning plaintiffs' measure of damages. Although the plaintiffs seem to have instituted the action on the theory that the defendants had converted the crops, and that the plaintiffs were entitled to the value thereof, the facts pleaded and proved disclose that plaintiffs' action sounds in damages for the tort committed by the defendants in wrongfully evicting them from the premises. If the action be considered as one in conversion, the measure of damages is that fixed by section 2875, Rev. Laws of 1910, which reads as follows:

"The detriment caused by the wrongful conversion of personal property is presumed to be:

"First. The value of the property at the time of the conversion with the interest from that time; or,

"Second. Where the action has been prosecuted with reasonable diligence, the highest market value of the property at any time between the conversion and the verdict, without interest, at the option of the injured party; and,

"Third. A fair compensation for the time and money properly expended in pursuit of the property."

The measure of damages for the forcible eviction from real property is found in section 2882, Rev. Laws of 1910, and is as follows:

"For forcibly ejecting or excluding a person from the possession of real property, the measure of damages is three times such a sum as would compensate for the detriment caused to him by the act complained of."

The evidence in this case shows that the plaintiffs recovered less than they were entitled to, whether the action be considered one for conversion or for damages for wrongful eviction, and the defendants could not have been prejudiced by any error in the instructions; for it has frequently been held by this court that, where the plaintiff was entitled to recover a sum equal to that awarded under any theory of the law, the judgment in his favor will not be reversed for alleged error in defining the measure of damages in the court's instructions to the jury. Ft. Smith & W. R. Co. v. Harman, 63 Oklahoma, 161 Pac. 1079; St. Louis, I. M. & S. R. Co. v. Marlin, 33 Okla. 510, 128 Pac. 108.

The evidence in this case was conflicting, and in such cases, where there is competent evidence reasonably tending to support the verdict of the jury, and no prejudicial error is shown in the instructions of the court, and its ruling upon law questions presented during the trial, the findings of the jury will not be disturbed upon appeal. Bunker v. Harding et al., 73 Oklahoma, 174 Pac. 749; Blasdel et al. v. Gower, 70 Oklahoma, 173 Pac. 644; Shawnee Nat. Bank v. Pool, 66 Oklahoma, 167 Pac. 994; Chicago, R. I. & P. R. Co. v. Pruitt, 76 Oklahoma, 170 Pac. 1143.

The judgment is affirmed.

All the Justices concur.