## SCHOOL DIST. NO. 17, ROGERS COUNTY, v. EATON, Co. Supt., et al.

No. 14720—Opinion Filed Feb. 12, 1924.

**1. Schools and School Districts—Change in Boundaries—Powers of County Superintendent.**

A county superintendent has no power or jurisdiction to change the boundaries of a regularly organized school district, by detaching a portion thereof, and attaching it to another organized district, or forming or creating thereby a new district, until a petition has been duly presented to him, signed by at least one-third of the qualified electors of such school district, and until the notice required by the statute has been given. Cleveland v. School District 79, 51 Okla. 69, Pac. 577.

**2. Same—Arbitrary Action—Injunction.**

Where a county superintendent arbitrarily and without the requisite petition and notice, attempts to detach a portion of the territory from an organized school district, injunction is the appropriate remedy. Cleveland v. School District 79, 51 Okla. 69, 151 Pac. 577.

**3. Same—Quo Warranto the Remedy.**

Quo warranto is the proper proceeding to determine the question of the legal existence or validity of the organization of a municipal corporation, such as a school district, but where there is no question as to the legality or validity and existence of the organization of the body corporate, the writ of injunction will lie, to enjoin public officials from arbitrarily altering or changing the boundaries of such municipal corporation or school district, and incidentally determine the boundaries.

**4. Evidence—Best and Secondary Evidence.**

The best evidence the nature of the case will admit of shall always be required, if possible to be had; but when the best evidence is not available and its absence properly accounted for, secondary evidence is admissible.

**5. Sufficiency of Evidence.**

The evidence as disclosed by the record in this case examined, and held sufficient to clearly establish the material allegations of plaintiff's petition.

(Syllabus by Jones, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Rogers County; C. W. Mason, Judge.

Action by School District No. 17, Rogers County, against Caroline Eaton, County Superintendent, and others. From the judgment plaintiff appeals. Reversed.

Frank Ertell, for plaintiff in error.

P. W. Holtzendorff, for defendants in error.

Opinion by JONES, C. This suit was instituted by the plaintiff in error, plaintiff below, against the defendant superintendent of public instruction of Rogers county to enjoin her from changing the boundary line of the plaintiff district; to enjoin the defendant county assessor from assessing the disputed territory in controversy as belonging to defendant school district No. 20 Rogers county, Okla., and to enjoin the defendant county treasurer from supplying the funds derived as taxes from the disputed territory to school district No. 20. School district No. 17 and 20 lie adjacent and the territory in dispute is described as sections 7 and 8, township 20 north, range 17 east, and the north half of sections 11 and 12, township 20 north, range 16 east, in Rogers county, Okla.

At statehood district 20 was organized and included the disputed territory. The record of the organization is incomplete and from all the records in evidence the law had not been fully complied with in that the book prescribed for such purposes by statute does not contain a description of the boundaries of the districts. The only record of its organization is the notice posted before organization which notice sets out the disputed territory as being in district 20, and a map showing the territory in dispute to be a part of 20. However, the district carried on its business and was recognized as a legal district and the plaintiff concedes that it became and was a lawful school district. The disputed territory was subsequently transferred to the plaintiff district. The defendants contend that such transfer was not made. All the records that are now

in the superintendent's office in so far as they are material, were offered in evidence. Such records are few and incomplete, and as shown by the evidence are evidently not all the records that have been made and that were at one time in existence. All the testimony shows, and it is not contradicted by any evidence, that this disputed territory was carried as belonging to 17, the plaintiff district, from and including the year 1912, to immediately prior to the time of filing this suit. The maps of the superintendent's office show it as belonging to district 17; the residents of the disputed territory were considered as belonging to 17 and took part in the public school meetings and elections of such district and not elsewhere from 1912 to the time of the institution of this suit; the children of said territory attended school in district 17 and were forbidden by district 20 to attend there without a transfer by the county superintendent, and payment therefor by district 17. All the taxes paid by the property owners of the disputed territory commencing with the year 1912 to the time of the institution of this suit were paid in district 17. The plaintiff district erected and maintains a four-room graded school, including high-school work, and the plaintiff offered to show a bond issue made by district 17, about 12 years prior this time, to erect and equip this school and that the owners of the territory in question have paid their part thereof in taxes, and that such bonds are now practically paid

The evidence shows that the superintendent in that office in 1915 made a complete series of maps, and district 17 in this series of maps contained the disputed territory. The former superintendent testified that this new series of maps were made from the records that were then a part of his office. The records cannot now be produced. The plat and map which defendant superintendent found as a part of the record when she took office shows the disputed territory in district 17. The superintendent who was in office in 1915 took his office in 1913, and he testified that the same plat or one similar, and placing the disputed territory in district 17, was a part of the record of that office during his incumbency. He further testified that when he took office in 1913 the disputed territory was a part of district 17. This territory was regarded by everyone concerned for ten years as belonging to district 17. Had it not been for the necessity of a certificate of the county superintendent in 1922, describing the boundaries of district 20 when that district issued its bonds, no question of the plaintiff's right to the territory would have arisen. In making this certificate the superintendent shows the description given in the above mentioned notice issued soon after the advent of statehood.

The defendants admit that no petition to change or alter the district in 1922 was filed and that no notice was given of the contemplated change. Without any other act or formality the defendant superintendent proceeded to take the disputed territory from district 17 and place it in district 20.

The evidence disclosed that the present superintendent had no records sufficient to show the facts here in controversy in the office, or in her possession at the time of the institution and trial of this suit. C. Dougherty, who was called as a witness, was superintendent for four years, commencing in 1913, testified that he had a file for each district, showing every thing that was done materially to the district; but such files have been lost, misplaced, or destroyed and were not available at the trial of this case.

There was no evidence offered to show that the change in the districts 20 and 17 was not made as contended in 1912 nor is any contention made that the change, if made, was illegal or irregular in any particular, but as we understand the record the defendants, appellees, contend that the boundary line of districts 20 and 17 have never been changed and remain just as they were created in 1908 immediately following statehood, regardless of the fact that for more than ten years the disputed territory was recognized and treated in every particular as a portion of district 17 and not as a part of district 20.

The matter was submitted to the court and at the close of the evidence the application for an injunction was denied, from which order and judgment of the court plaintiff appeals. Numerous specifications of error are assigned. The seventh assignment, we think, raises the vital issue in the case:

"That the court erred in that its findings and judgment are not sustained by the law and evidence in the case."

The first proposition presented in brief of plaintiffs in error is:

"That the defendant county superintendent had no authority to change the boundary line without a proper petition having been filed and notice given."

Referring of course, to the boundary lines which had been recognized by the patrons living within the disputed territory from 1912 to 1922, and the second proposition raises the question of the sufficiency of the evidence to show to which district the disputed territory properly belongs.

The facts are substantially as heretofore stated and disclose unquestionably that the territory in dispute was recognized and treated as a portion of district 17 by both appellants and appellees herein for a period of more than ten years. The property was assessed as a part of district 17. All parties, as far as the record discloses, residing therein recognized the school in district 17 and patronized the same with one exception, and in that instance the party, while patronizing the school in district 20, recognized district 17 as being his district and procured transfer from the county superntendent authorizing his children to attend the school in district 20 and transferring the funds to which the children were entitled from 17 to 20. There are no records in existence which conclusively show the facts here in controversy, but it is primary rule of law that where the best, or record evidence can not be obtained secondary or oral testimony is competent and may be offered to show the facts. Farmers National Bank v. Hartoon, 60 Okla. 193, 159 Pac. 844, 10 R. C. L., 912, art. 68.

The evidence seems to be conclusive in this case that the disputed territory is a part of district 17 and should be so recognized. Appellees urge in their brief, the insufficiency of the evidence and that the proper remedy was by quo warranto and not by injunction.

Defendants in error in support of their contention as to the insufficiency of the evidence cite the case of Woolsey v. Nelson, 43 Okla. 97, 141 Pac. 430, and School District v. Goodpasture, 13 Okla. 244, 74 Pac. 501, and other authorities in support of their contention, but we fail to see the application of the authorities cited to the facts as we understand them in this case. The facts as disclosed by the record are conclusive to the minds of the court, that the contention of appellants is correct, and that the proof clearly shows that there was a change in the boundary line of the districts in 1912, and that at all times since that date until just prior to the institution of this suit the disputed territory was recognized and treated as a part of district 17 by all parties here concerned.

The second proposition urged by defendants in error is that quo warranto is the proper remedy and not injunction, and in support of this contention cite the case of Fowler v. Park, 79 Okla. 1, 190 Pac. 668, and Cheek v. Eye et al., 96 Okla. 44, 219 Pac. Pac. 883, but from an examination of these cases we find that they deal with a different state of facts from that with which we are here confronted. In the case of Fowler v. Park the syllabus is as follows:

"After a municipal corporation, such as consolidated school district, has been organized, quo warranto is a proper remedy to determine the question of its legal existence or the validity of its organization. The courts are without power so to do by injunction, or to restrain existing officers from exercising their proper function."

This is a case, as will be seen from the above quotation, where the legal existence or the validity of the organization of the school district was called in question. In the instant case no question is raised as to the existence of either of the school districts in question, nor as to the validity of the organization of same. It is admitted by all parties concerned that both district 17 and 20 are legally organized and existing; no question is raised as to the legality or authority of the officers of the districts, they are also recognized as the legally elected, qualified, and acting officers of the county and districts. The question in the case at bar is merely a dispute as to the boundary line, which involves only a small portion of the territory contained in the respective districts, and we think is clearly distinguishable from the question raised in the authorities cited.

Appellants, in support of their contention that the evidence offered was sufficient to justify the relief sought, cite 35 Cic. 845:

"Where a school district has been in continual existence for years, acting as such, and recognized as such, it will be presumed that it was legally and regularly organized; and in some states it is expressly provided by statute that school districts which have exercised the franchises and powers incident to such districts for a prescribed period of time shall be presumed to have been legally organized. Proof that school trustees are acting in discharge of the duties required by statute is prima facie evidence of the organization of the district. The best evidence of the corporate existence of a school district formed by an official under delegated legislative power is the records of such official together with the records of the district; and it has been held doubtful whether the existence of a school district

as a body corporate, capable of taking and holding property, can be proved by parol evidence. It has been held however, the existence and organization of a school district may be proved by reputation, where there is no record. The certificate of the registration of a school district bond, indorsed on such bond, signed and sealed by the county clerk, and dated at a time shortly subsequent to the time when such district is alleged to have been legally organized, introduced and received in evidence without objection, is evidence of the corporate existence of the school district by which such bond purports to have been issued. A rough sketch or map designated as 'school section map township of B.' but without signature, seal or date, having the appearance of being very old and being produced from the proper custody is admissible as evidence of the formation of the school districts in such township. * * *"

This authority, we think, is in support of the evidence offered to establish the boundary line between the two districts, and while the quotations cited announce the rule:

"That it has been held doubtful whether the existence of a school district as a body corporate, capable of taking and holding property, can be proved by parol evidence"

—it is not effective, so far as this case is concerned, for the reason that no question is raised as to the legal existence as to the school district in question as a body corporate.

In the case of Watkins v. Havighorst, 13 Okla. 128, 74 Pac. 318, the following rules are announced:

"'The law presumes the validity and regularity of official acts of public officers within the line of their official duty, as it does the legality of the acts of private persons; and this presumption obtains until overcome by proof, as to all acts involving the performance of ministerial or administrative duties, except in cases where it is sought to take away personal rights of a citizen or deprive him of his property, or place a charge or lien thereon."

And in the body of the opinion we find this language:

"Now the county surveyor is a public officer, and laying out and establishing a line between adjacent owners we do not think comes within the definition of taking away personal rights of either party, or of depriving either of his property, or placing a charge or lien thereon. It was simply an attempt in a legal way to establish the boundary line between the two, and to establish the corners and proper boundaries of lands lying adjacent. Now this being true, that this was the act of a public official in the line of his official duty, it necessarily follows that before the presumption of validity which the law throws around his action can be overcome, the proof must be such as to in some way impeach his action, or satisfy the court that his conclusions were wrong."

We think this authority in point, for the reason that the long and continuous recognition of the territory in dispute by the constituted authorities of the county and school district is a circumstance clearly indicating that the districts were changed or altered as contended by plaintiff in error in 1912. And, second, we think the evidence offered together with the facts of continued recognition is clearly sufficient to overcome the act of the county superintendent in 1922 when she attempted to arbitrarily change the boundary line of the districts, and sufficient to satisfy the court that her conclusions were wrong. The question of statute of limitation, collateral attacks, estoppel, defacto district, presumption given the acts of public officials, and other questions discussed by appellants and appellees, we think are not material to the issues, but we deem that the question of sufficiency of the evidence and propriety of the remedy pursued —that of injunction—is decisive of the rights of the parties in this case, and having found that the evidence was sufficient to maintain the allegations of the plaintiffs' petition, and that the writ of injunction was the proper remedy by which to determine the boundary line or legally organized and existing school district. And the court was in error in the rendition of its judgment and we recommend that the case be reversed, and in view of the fact that the proof clearly establishes the rights of the appellants and the relief sought, we render judgment granting the injunction, restraining the county superintendent from changing or altering the boundary line between districts 17 and 20, except as in the manner provided by law, as it has been recognized since 1912 and until the institution of this suit. And the county tax assessor be directed to assess the property in the disputed territory in district 17 and that the county treasurer be directed to give district 17 proper credit for all money received from the area in dispute.

By the Court: It is so ordered.